# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

July 25, 2014

Lyle W. Cayce
Clerk

No. 13-10852

MURCHISON CAPITAL PARTNERS, L.P.; ROBERT MURCHISON; DR. ALAN HULL, M.D.; BACK NINE INVESTMENTS, LIMITED; DOUGLAS KELLER; ET AL,

Plaintiffs - Appellees

v.

NUANCE COMMUNICATIONS, INCORPORATED,

Defendant - Appellant

Appeal from the United States District Court
for the Northern District of Texas

Before REAVLEY, JONES, and GRAVES, Circuit Judges.

JAMES E. GRAVES, JR., Circuit Judge:

This appeal arises from a lawsuit to clarify an arbitration award concerning an alleged breach of a corporate merger agreement. Nuance Communications now appeals the district court's order remanding this case back to the arbitration panel for clarification of the arbitration award. Since we have previously stated that a district court order remanding a case back to an arbitration panel for clarification is not a final order, we DISMISS this appeal for lack of jurisdiction.

No. 13-10852

## FACTS AND PROCEDURAL HISTORY

Plaintiff-Appellees are stockholders of a Texas-based startup software company called Vocada, Inc. ("Vocada"). Defendant-appellant Nuance Communications, Inc. ("Nuance") is a publicly traded global computer software company located in Massachusetts. Vocada's sole product was a software program called Veriphy, which documents patients' medical test results in radiology departments and hospitals. Nuance produces a software product called PowerScribe, a speech recognition software used in medical care facilities that allows users to convert spoken word into text appearing on computer screens. Veriphy worked well with Nuance's PowerScribe program and eventually Nuance approached Vocada about a merger. Vocada and Nuance believed that the sales of both PowerScribe and Veriphy would increase if sold together as one software suite.

Nuance acquired 100 percent of Vocada's stock through a merger agreement in 2007. Pursuant to the agreement, Nuance paid $24 million as the upfront purchase price and agreed to pay up to an additional $21 million in "Earnout Consideration," contingent upon Veriphy sales producing specified levels of revenue in the years after the merger. The merger agreement contained a binding arbitration clause for disputes relating to the Earnout Consideration.

Three years after the merger the Vocada stockholders had not received any Earnout Consideration, so their stockholder representative filed a demand for arbitration alleging that Nuance had defrauded the Vocada stockholders. Vocada asserted that it was entitled to the $21 million Earnout Consideration as its benefit-of-the-bargain damages, and that in the alternative, it was entitled to out-of-pocket damages that would be measured by the difference

2

No. 13-10852

between the $24 million Nuance paid as the up-front purchase price for Vocada's stock and the actual value of Vocada at the time of the merger.

After a two week arbitration hearing the arbitration panel returned an award finding that Nuance committed fraud in inducing Vocada into the merger agreement by making materially false statements about Nuance's intentions to sell the Veriphy software product, but that Vocada was not entitled to damages because Nuance's fraudulent representations were not the cause of Veriphy's poor revenue in the years after the merger. Instead, the panel found that Vocada's own salesforce, who joined Nuance after the merger, performed poorly, the Veriphy product did not have "buy-in" from the medical profession, the 2008 economic recession impacted Veriphy's sales, and Veriphy's pre-merger customer base had been substantially overstated by Vocada.

The arbitration clause in the merger agreement required the arbitration panel to support its award by "written findings of fact and conclusions." Accordingly, the arbitration panel issued a thirty-page award in which it described its "Findings of Fact" and "Conclusions of Law." The arbitration award did not differentiate between Vocada's claims for out-of-pocket and benefit-of-the-bargain damages, but rather, stated that "Vocada is not entitled to any portion of the $21 Million Earnout Consideration on account of its statutory fraud claim."

On November 1, 2012, Plaintiff-Appellees filed an application in Texas state court on behalf of the Vocada shareholders to vacate and remand the arbitration award. The Vocada shareholders argued that the arbitration panel exceeded its authority by failing to issue specific findings of fact and conclusions of law on Vocada's request for out-of-pocket damages. Specifically, Vocada asserted that the $21 million Earnout Consideration was related only

No. 13-10852

to its benefit-of-the-bargain damages request. Therefore, Vocada argues, the arbitration panel's award stating that Vocada was not entitled to any of the $21 million did not address the out-of-pocket losses. Nuance removed the action to the U.S. District Court for the Northern District of Texas, Dallas Division under diversity jurisdiction.

The district court found that the arbitration panel exceeded its authority under the arbitration agreement by failing to provide sufficient findings of fact and conclusions of law regarding Vocada's out-of-pocket damages claim. Accordingly, the district court remanded the case back to the arbitration panel for consideration of the issue of out-of-pocket damages. The district court made clear that it was remanding the award for further consideration but was not vacating the award. Nuance appealed the district court's remand order to this Court.

## STANDARD OF REVIEW

"We review questions of subject matter jurisdiction *de novo*." *Wagner v. United States*, 545 F.3d 298, 300 (5th Cir. 2008). We review a district court's order confirming or vacating an arbitration award *de novo*, "but the review of the underlying award is exceedingly deferential." *Rain CII Carbon, LLC v. ConocoPhillips Co.*, 674 F.3d 469, 472 (5th Cir. 2012).

## DISCUSSION

Nuance appeals the propriety of the district court's remand order, but Plaintiff-Appellees assert that appellate jurisdiction is lacking here and that this appeal should be dismissed accordingly. We must first address the issue of our appellate jurisdiction. *See Castaneda v. Falcon*, 166 F.3d 799, 801 (5th Cir. 1999) ("We must always be sure of our appellate jurisdiction and, if there is doubt, we must address it, *sua sponte* if necessary." (citation omitted)).

4

No. 13-10852

Section 16 of the Federal Arbitration Act (FAA) allows for appeals from, *inter alia*, orders confirming or denying confirmation of an award or partial award, orders modifying, correcting, or vacating an award, and a final decision with respect to an arbitration that is subject to the FAA. 9 U.S.C. § 16(a). It is well established that an order confirming an arbitration award is a final appealable order. *Id.* §16(a)(1)(D). It is also well established that an order vacating an award and remanding the case back to arbitration for a rehearing is a final appealable order. *See Atl. Aviation, Inc. v. EBM Grp., Inc.*, 11 F.3d 1276, 1280 (5th Cir. 1994) overruled on other grounds by *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 341 n.10 (5th Cir. 2004) (noting that under the FAA "orders which vacate awards and direct a rehearing of the arbitration dispute . . . are appealable"). Here, the district court neither vacated nor confirmed the arbitration award but instead remanded the award back to the arbitration panel for further consideration of Vocada's out-of-pocket damages. (R. 730). Specifically, the district court held that the arbitration panel "failed to provide sufficient findings of fact and conclusions of law on the issue of out-of-pocket damages, which was submitted to it but not resolved." (R. 729).

Plaintiff-Appellees rely on this Court's decision in *Forsythe International, S.A. v. Gibbs Oil Co. of Texas*, 915 F.2d 1017 (5th Cir. 1990) for their assertion that appellate jurisdiction is lacking in this case. In *Forsythe*, we addressed the question of whether a district court's order vacating an arbitration award and remanding the case to a different arbitration panel for an entirely new hearing was a final appealable order. *Id.* at 1019–20. While we found that the district court's vacatur and remand order was appealable, we also stated that "[h]ad the district court remanded to the same arbitration panel for clarification of its award, the policies disfavoring partial resolution

5

No. 13-10852

by arbitration would preclude appellate intrusion until the arbitration was complete." *Id.* at 1010 n.1.

Other Circuits have adopted the rule found in *Forsythe*, finding that orders vacating an award and remanding the case for an entirely new arbitration are appealable, but orders remanding a case back to an arbitration panel for further clarification of an existing award are not. *See, e.g., Jays Foods, L.L.C. v. Chem. & Allied Prod. Workers Union, Local 20, AFL-CIO,* 208 F.3d 610, 613 (7th Cir. 2000) ("[T]he Federal Arbitration Act [] make[s] orders vacating arbitral awards appealable immediately, though nonfinal, unless the purpose of the remand was merely to enable the arbitrator to clarify his decision in order to set the stage for informed appellate review." (internal citation omitted)); *Virgin Islands Housing Authority v. Coastal General Construction Services Corp.,* 27 F.3d 911, 913–14 (3rd Cir. 1994) (noting that for purposes of appellate jurisdiction, "the distinction is whether the additional hearing is ordered merely for purposes of clarification -- an order that would not be appealable -- or whether the remand constitutes a re-opening that would begin the arbitration all over again [which would]."); *Landy Michaels Realty Corp. v. Local 32B-32J, Service Employees Int'l Union,* 954 F.2d 794, 797 (2nd Cir. 1992) (finding that a district court's remand that "ordered the same arbitrator to make some further decision with respect to the content of the award . . . . is not immediately appealable").

Nuance contends that the district court's remand order "did not remand for 'clarification' of the arbitration award, as imagined in *Forsythe*'s hypothetical." Nuance's argument is unavailing, as the district court's order stated that the panel "failed to provide sufficient findings of fact and conclusions of law on the issue of out-of-pocket damages" and its final judgment explained "[t]he case is remanded to the Arbitration Panel for consideration of

6

No. 13-10852

the issue of out of pocket damages." Accordingly, the district court remanded the case back to the same arbitration panel for further clarification of the existing award, which fits squarely within the hypothetical posed by *Forsythe*.

Appellants also argue that the district court's order is a final judgment under the Supreme Court's holding in *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 86 (2000). In *Green Tree*, the Court considered whether "an order compelling arbitration and dismissing a party's underlying claims is a 'final decision with respect to an arbitration' within the meaning of § 16(a)(3) of the Federal Arbitration Act, and thus is immediately appealable pursuant to that Act." *Id.* at 82. The Court explained, "[b]ecause the FAA does not define 'a final decision with respect to an arbitration' . . . we accord the term its well-established meaning" as "a decision that ends the litigation on the merits and leaves nothing more for the court to do but execute the judgment." *Id.* at 86 (internal quotation marks and citations omitted).

The Court in *Green Tree* held that the district court's order compelling arbitration was a final judgment because it ended the litigation on the merits as far as the district court was concerned, even though its order contemplated further proceedings in arbitration:

> The District Court's order directed that the dispute be resolved by arbitration and dismissed respondent's claims with prejudice, leaving the court nothing to do but execute the judgment. That order plainly disposed of the entire case on the merits and left no part of it pending before the court. . . . The District Court's order was therefore "a final decision with respect to an arbitration" within the meaning of § 16(a)(3), and an appeal may be taken.

*Green Tree*, 531 U.S. at 86–87 (internal citation omitted).

Here, Appellants argue that the district court's order should be viewed as a final order under *Green Tree* because it resolved the sole issue in dispute—namely, whether the panel exceeded its authority under 9 U.S.C. §

7

10(a)(4) by failing to address Vocada's out-of-pocket damages. The order in *Green Tree*, however, directed the parties to arbitration and then dismissed the case with prejudice. *Id.* at 89 ("We therefore conclude that where, as here, the District Court has ordered the parties to proceed to arbitration, *and dismissed all the claims before it*, that decision is 'final' within the meaning of § 16(a)(3), and therefore appealable.") (emphasis added). Here, in contrast, the district court did not dismiss the parties' case (in fact, the court denied Nuance's motion to dismiss), nor did it vacate or confirm the award, but simply entered a judgment remanding the award for further clarification.

We must also decline to exercise jurisdiction over the district court's nonfinal order to avoid generating piecemeal appeals. For example, if we accepted jurisdiction to entertain this appeal and, assuming *arguendo*, affirmed the district court's decision to remand the case back to the arbitration panel, the panel would still have to clarify its award to address Vocada's out-of-pocket damages theory. The parties could then return to the district court with any complaints they wish to raise regarding the clarified arbitration award, and could then file a second appeal in this Court based upon the district court's decision. In this case, we would have generated two separate appellate decisions on the same arbitration award, resulting in piecemeal appeals. Instead, the parties should wait for the arbitration panel to clarify its decision upon remand, and then they may seek one appeal of the entire proceeding based on the clarified award, raising all of their complaints in a single appeal. *See, e.g.*, *Jays Foods,* 208 F.3d at 613 (explaining that a district court's order remanding a case to the arbitration panel was not a final, appealable order when "the purpose of the remand was merely to enable the arbitrator to clarify his decision in order to set the stage for informed appellate review." (internal

citation omitted)).  Accordingly, our interest in preserving judicial resources by avoiding piecemeal appeals obligates us to decline jurisdiction in this case.

Finally, declining jurisdiction over the district court's order and permitting the arbitration panel to clarify its award is necessary given our deferential standard of review of arbitration awards.  Although "[t]he arbitrator's award is not subject to judicial review on the merits," a "remand to the arbitrator is the appropriate disposition of an enforcement action when an award is patently ambiguous, [or] when the issues submitted were not fully resolved." *Oil, Chem. & Atomic Workers Int'l Union, Local 4-367 v. Rohm & Haas, Texas Inc.*, 677 F.2d 492, 495 (5th Cir. 1982); *see also Brown v. Witco Corp.*, 340 F.3d 209, 216 (5th Cir. 2003) ("A court is not authorized to review the merits of the arbitrator's decision . . .  [but] if the arbitration award in question is ambiguous in its scope or application, it is unenforceable.").

Here, the district court found that the panel exceeded its authority by failing to adhere to the parties' bargained-for contractual provision requiring the arbitrators to explain their award with "factual findings and conclusions." Nuance contends, however, that there were sufficient findings of fact in the panel's award to conclude that the panel implicitly denied any of Vocada's out-of-pocket losses.  Nuance supports its argument with this Court's deferential standard of review:  "In deciding whether the arbitrator exceeded its authority, we resolve all doubts in favor of arbitration." *Executone Info. Sys., Inc. v. Davis*, 26 F.3d 1314, 1320 (5th Cir. 1994).  This Court has held, however, that "[a] court may not interpret the award in order to resolve the ambiguity and implement the award; instead, the court must remand the award to the arbitrator with instructions to clarify the award's particular ambiguities." *Brown*, 340 F.3d at 216.  Accordingly, declining to exercise appellate jurisdiction over the district court's nonfinal order remanding this case back to

No. 13-10852

the arbitration panel for further clarification is fully supported by our deferential standard of review.

## CONCLUSION

Since the district court neither confirmed nor vacated the arbitration award we have no statutory ground for appellate jurisdiction under the FAA. *See* 9 U.S.C. § 16(a)(1)(D)–(E).    Moreover, *Forsythe* precludes appellate jurisdiction when an order remands a case back to the arbitrators for further clarification of an existing award.  For these reasons, we DISMISS this appeal for lack of jurisdiction.

No. 13-10852

JONES, Circuit Judge, dissenting.

Because it is wrong to consider the district court's order as non-final and therefore not immediately appealable, and because mischief will come of this error, I respectfully dissent.

The standard meaning applies to the term "final decision" where the FAA makes "a final decision with respect to an arbitration" immediately appealable.  9 U.S.C. § 16(a).  When Congress enacted this provision, commentators interpreted it as adopting the pre-existing finality doctrine. 15B Wright & Miller, FEDERAL PRACTICE AND PROCEDURE § 3914.17 (2d ed. 1992) (concluding that the "obvious interpretation" of § 16(a) "is that it incorporates the finality doctrine").  In *Green Tree Fin. Corp.-Ala. v. Randolph,* the Supreme Court affirmed this view.  *Green Tree,* 531 U.S. 79, 86, 121 S. Ct. 513, 519 (2000) (construing "final decision" according to its "well-established meaning").  Under *Green Tree*, a decision relating to an arbitration is final if it "ends the litigation on the merits and leaves nothing more for the court to do but execute the judgment."  *Id.*  Further, a final decision is immediately appealable "regardless of whether the decision is favorable or hostile to arbitration." *Id*.

Here, the district court's ruling resolved the entire case before it.  The court ruled on the only ground of relief presented to it and concluded that the arbitrator did not resolve the question of out-of-pocket damages.  It remanded the award because the arbitration panel "exceeded its powers" under 9 U.S.C. § 10(a)(4).  It did not determine that the award *may* be silent on the issue of out-of-pocket damages and defer its final ruling until the arbitrator clarified the meaning of certain sections of its opinion.  The district court certainly thought that its work was done.  It closed the case, issued a "Final Judgment,"

11

No. 13-10852

and did not stay the action or retain jurisdiction over the case after the remand. *See Saturn Distribution Corp. v. Paramount Saturn, Ltd.*, 326 F.3d 684, 686-87 (5th Cir. 2003) (holding that an order was final for these identical reasons). Even if the district court's ruling meant that the arbitrator had more work to do, the *court*'s work was done, which is what matters for the purposes of FAA finality under *Green Tree*. *Green Tree*, 531 U.S. at 86, 121 S. Ct. at 519 (holding that a decision is final "when it leaves nothing more for the *court* to do") (emphasis added).

The majority asserts that under *Green Tree*, a district court must dismiss a case "with prejudice" in order for a remand order to be a final decision. Although the district court in *Green Tree* dismissed plaintiff's claims on account of a binding arbitration provision, the Supreme Court did not hold that a formal order of dismissal with prejudice is a *sine que non* of finality. Instead, it defined "final decision" consistent with that term's "well-developed and longstanding meaning" as "a decision that 'ends the litigation on the merits and leaves nothing more for the court to do but execute the judgment.'" *Id.* at 86, 121 S.Ct. at 519 (citing cases); *see also* 19 MOORE'S FEDERAL PRACTICE § 201.10 (3d ed. 2014) ("Essentially, a final decision is one that ends the litigation on the merits so that the only thing left for the district court to do is to execute the judgment."). Where, as here, a remand order ends the litigation before the district court, *Green Tree* clearly provides for appellate jurisdiction over the case.[1]

---

[1] The district court's denial of Nuance's motion to dismiss, noted by the majority, is irrelevant to the finality question. Nuance moved to dismiss *for improper venue* on the grounds that the forum-selection clause in the parties' merger agreement barred Murchison from litigating the arbitration award outside of any court within the State of New York. The outcome of that jurisdictional motion could not possibly affect whether the district court's order granting Murchison's remand petition was a final order.

No. 13-10852

The majority also errs in concluding that appellate jurisdiction is lacking under *Forsythe*'s dicta that an order of remand for the purpose of clarifying an arbitral award is not appealable. *Forsythe v. Gibbs,* 915 F.2d 1017, 1020 n.1 (5th Cir. 1990). Even if not dicta, *Forsythe* predates *Green Tree* by a decade. Under *Green Tree*, an order remanding an arbitral award for clarification that leaves the district court "nothing more . . . to do but execute the judgment" is final. *Green Tree*, 531 U.S. at 86, 121 S. Ct. at 519. By contrast, a remand order for clarification that leaves the court *something* to do once it has received the requested clarification is not final. *Id.*

A notable example of a non-final clarification order is *Hanford Atomic Metal Trades Council, AFL-CIO v. General Elec. Co.*, 353 F.2d 302 (9th Cir. 1965), the case that *Forsythe* cites to support its dicta. *See Forsythe,* 915 F.2d at 1020 n.1. In *Hanford*, the district court, faced with a question concerning the construction of an arbitral award, entered an interim judgment ordering the parties to present the dispute over the meaning of the award to the arbitrator. *Hanford,* 353 F.2d at 305. After the arbitrator concluded its review on remand, the district court, which had retained jurisdiction over the case, entertained the clarified opinion and entered final judgment. *Id.* at 305-06.

There is a clear difference between the case before us and *Hanford*. First, no interim order was issued here. As noted earlier, the district court did not defer its final ruling, as in *Hanford*, until the arbitrator clarified the arbitral award and opinion. It issued a final order that the arbitration panel had not resolved the claim for out-of-pocket damages and thereby exceeded its powers under the FAA § 10(a)(4). Second, the district court neither retained jurisdiction nor otherwise indicated that it would resolve any disputes arising over the new order. We must presume that the district court no longer has jurisdiction over this dispute. *See Jay's Foods, L.L.C. v. Chem. & Allied Prod.*

13

*Workers Union, Local 20, AFL-CIO*, 208 F.3d 610, 613 (7th Cir. 2000) (indicating that that jurisdiction is presumably lost on remand unless expressly retained). In sum, the clarification order here ended the district court's work, which makes it a final order under *Green Tree*.

The other cases cited by the majority also fail to defeat appellate jurisdiction.   The majority invokes *Jay's Foods*'s dicta about the non-appealability of remand orders that merely seek to clarify an award.   It neglects to mention, however, that the Seventh Circuit went to considerable lengths in *Jay's Foods* to acknowledge that a previous appellate panel had *erred* when it found *no* appellate jurisdiction over the remand order at issue in the case.  *Jay's Foods,* 208 F.3d at 612 (reasoning that the earlier panel was mistaken "in thinking that the district court's order of remand was not immediately appealable."); 15B Wright & Miller, FEDERAL PRACTICE AND PROCEDURE § 3914.17 n.51 (2d ed. Supp. 2014) (explaining that the court in *Jay's Foods* "observed that it been wrong to dismiss the union's initial appeal from the remand order on the theory that it was not final").   Similarly, the majority relies on dicta in *V.I. Hous. Auth. v. Coastal Gen. Constr. Servs. Corp.*, although that court devoted the lion's share of its jurisdictional discussion to explaining why the district court's order vacating and remanding the arbitral award *was* immediately appealable.  *V.I. Hous. Auth.,* 27 F.3d 911, 913-14 (3d Cir. 1994).   Our decision should not be controlled by mere dicta, especially in the face of *Green Tree.*

In only one of the majority's cases, *Landy Michaels Realty Corp. v. Local 32B-32J, Service Employees Int'l Union*, did the court rule *against* appellate jurisdiction.   But *Landy* is distinguishable. In *Landy*, the non-finality of the remand order was underscored by the fact that the district court retained

jurisdiction over the case. *Landy*, 954 F.2d 794, 195 (2d Cir. 1992). Here, the district court, without retaining jurisdiction, left no unfinished business.

Although it is difficult to tell exactly what effect it will have, the majority opinion does not bode well for arbitration. On one hand, a party that prevails at arbitration and fears that a district court will remand the arbitral award for clarification need only cross-move to confirm the award. Under the FAA, an order confirming *or denying* confirmation of the award, even in part, is immediately appealable. *See* 9 U.S.C. § 16(1)(D). Had Nuance cross-moved to confirm the entire award here, the district court might have denied confirmation for the same reason that it remanded the arbitral award—namely for exceeding the panel's authority.

On the other hand, any court might refuse to rule on a motion to confirm in the belief that it could not finally decide without a complete arbitration award. Rather than order an interim remand for clarification, however, a court may choose, as here, to wash its hands of the case with a fully dispositive order. Accordingly, the majority's refusal to accept jurisdiction here will encourage the proliferation of requests for "remand" precisely because (a) such orders are not appealable under this ruling, and (b) the cost and delay associated with such maneuvers may prompt settlements at odds with the arbitration awards. The majority has opened the door to an outcome that is inconsistent with the policy favoring expeditious arbitration behind the FAA. *See Brown v. Pac. Life Ins. Co.*, 462 F. 3d 384, 392 n.5 (5th Cir. 2006) (explaining that the statute's general purpose). When parties must ping pong back and forth between the arbitrator and the court, arbitration's essential virtue as a speedy and efficient dispute resolution tool is lost.

Reaching the merits, as I would, it seems obvious that the district court erred in concluding that the arbitration panel exceeded its authority. Contrary

15

to what the majority states, there is no ambiguity in the arbitration opinion. The panel resolved all claims brought by the Vocada investors.

As a general matter, an arbitrator has no obligation to explain the grounds for a take-nothing award. *Brabham v. A.G. Edwards & Sons Inc.*, 376 F.3d 377, 385 (5th Cir. 2004) (providing that arbitrators need not give reasons for their awards). Here, however, the parties modified the default rule when they stipulated that the award must be supported by written findings of fact and conclusions of law. Nevertheless, in determining whether the arbitral award complies with this requirement, our review remains "exceedingly deferential." *Rain CII Carbon, LLC v. ConocoPhillips Co.*, 674 F.3d 469, 472 (5th Cir. 2012). The sole question is "whether the arbitrator (even arguably) interpreted the parties' contract, not whether he got its meaning right or wrong." *Oxford Health Plans v. Sutter*, 133 S. Ct. 2064, 2068 (2013). We must sustain the award as long as the arbitrator's decision essentially applies the underlying contract, and resolve all doubts in favor of arbitration. *Timegate Studios, Inc. v. Southpeak Interactive, L.L.C.*, 713 F.3d 797, 802 (5th Cir. 2013).

The issue on appeal is whether the arbitration panel resolved the Vocada investors' claim for out-of-pocket damages.[2] These damages represent the difference between the $24 million up-front payment and Vocada's actual market value at the time of the merger. Significantly, the investors presented only a single evidentiary basis for these damages at arbitration: the testimony of its former owners that the company's actual market value was ten times revenues—approximately $40 million—as a result of its projected sales.

---

[2] The parties do not dispute that the panel addressed and rejected the investors' only other claim for damages—namely, that they were entitled to $21 million in "earnout" consideration under the merger agreement.

No. 13-10852

In response to all of the investor claims, and after taking testimony for two weeks, a well-credentialed three-person panel wrote a thirty-page, single-space opinion justifying a take-nothing decision. The opinion is fulsomely grounded in the facts and law. Among its many findings, the panel found that Vocada overestimated its future revenue stream from its customer base and deal pipeline. The panel found that Vocada's deals in progress generated only $1 million after the merger instead of the $10 million projected, and that revenues from contract renewals fell sharply after the merger, contrary to the parties' expectations.

The investors contend that these findings are insufficient because they focus on Vocada's performance after the merger, not on its value at the time of the merger, which is the basis for their out-of-pocket damages claim. But their *sole* argument to the arbitration panel was that Vocada's actual value at the time of the merger was greater than the up-front payment because of the company's expected sales growth (the "attractive revenue ramp," in the words of Vocada's owner). The panel squarely rejected this argument in finding that Vocada had significantly overestimated its future sales, the critical factor driving Vocada's valuation at the time of the merger. Thus, the panel vitiated the out-of-pocket damage claim even if it did not mention this claim by name when it concluded that "Vocada shall take nothing on its claim*s*" and "[t]his Award is in full settlement of *all claims* and counterclaims submitted to this Arbitration." (emphasis added). The panel's detailed findings fully resolved the dispute over whether Vocada's shareholders suffered damages as a result of Nuance's alleged fraud. Under the "exceedingly deferential" standard that appellate courts apply to unambiguous awards, the take-nothing award should be sustained.

For these reasons, I respectfully dissent.