**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JON GREGORY SANCHEZ,
          *Plaintiff-Appellee*,

v.

ROBERT ELIZONDO,
          *Defendant-Appellant.*

No. 16-17345

D.C. No.
3:15-cv-00474-
RCJ-VPC

OPINION

Appeal from the United States District Court
for the District of Nevada
Robert Clive Jones, Senior District Judge, Presiding

Argued and Submitted December 4, 2017
San Francisco, California

Filed January 5, 2018

Before: MILAN D. SMITH, JR. and SANDRA S. IKUTA,
Circuit Judges, and JOHN D. BATES,[*] Senior District
Judge.

Opinion by Judge Milan D. Smith, Jr.;
Concurrence by Judge Ikuta

---

[*] The Honorable John D. Bates, Senior United States District Judge
for the District of Columbia, sitting by designation.

## SUMMARY[**]

### Arbitration

The panel reversed the district court's order vacating Robert Elizondo's arbitration award and remanding for a new arbitration; and remanded to the district court for further proceedings.

Elizondo was awarded $75,000 in damages in the parties' arbitration, which Elizondo initiated to recoup losses he suffered as a result of plaintiff Gregory Sanchez's mismanagement of his investment portfolio.

The panel held that there was jurisdiction pursuant to 9 U.S.C. § 16 of the Federal Arbitration Act to review vacatur orders that also remand for a new arbitration.

The panel held that the district court erred in vacating the award on the basis that the arbitrator exceed his authority. The panel held that the arbitrator's award was not completely irrational; and the arbitrator confined himself to the interpretation and application of the parties' agreement; and therefore the arbitrator did not exceed his authority. The panel also held that the arbitrator did not exhibit manifest disregard of the law.

Because the district court resolved Sanchez's petition on only one of the several grounds for vacatur Sanchez asserted, the panel remanded for further proceedings.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Judge Ikuta concurred. She would hold that the court clearly had jurisdiction under 9 U.S.C. § 16, and there was no need for the majority to engage in an examination of the policies underlying § 16(a) or the potential meaning of Congressional silence to determine the scope of the jurisdictional grant.

## COUNSEL

Jonathan E. Neuman (argued), Fresh Meadows, New York, for Defendant-Appellant.

Steven F. Bus (argued), Reno, Nevada, for Plaintiff-Appellee.

## OPINION

M. SMITH, Circuit Judge:

Defendant-Appellant Robert Elizondo appeals the district court's order vacating his arbitration award and remanding for further proceedings. Elizondo was awarded $75,000 in damages (the Award) in the parties' arbitration, which Elizondo initiated to recoup losses he suffered as a result of Plaintiff-Appellee Gregory Sanchez's mismanagement of his investment portfolio. Elizondo argues that the district court erred in vacating the Award on the basis that the arbitrator exceeded his authority.

We agree, reverse the district court's vacatur, and remand the case for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

The essential facts in this case are undisputed. In April of 2008, Elizondo retained Sanchez, who is licensed as a securities broker by the Financial Industry Regulatory Authority (FINRA), to manage his investment portfolio. In September of 2008, Sanchez invested a portion of Elizondo's portfolio in leveraged inverse Exchange Traded Funds. Elizondo believed that this investment placed his holdings in an inappropriately risky position.

On April 29, 2014, Elizondo brought a claim against Sanchez, alleging that Sanchez had mismanaged Elizondo's portfolio. The parties executed a FINRA Arbitration Submission Agreement, according to which they agreed (1) to submit their case to arbitration in accordance with the FINRA By-Laws, Rules, and Code of Arbitration Procedure; (2) to be bound by the procedures and rules of FINRA relating to arbitration; and (3) in the event a hearing was necessary, to conduct it in accordance with the FINRA Code of Arbitration Procedure.

FINRA Rule 12401 provides that if the amount of a claim is greater than $50,000, and not more than $100,000, "the panel will consist of one arbitrator unless the parties agree in writing to three arbitrators." FINRA Rule 12401(b). Only "[i]f the amount of a claim is more than $100,000" should "the panel . . . consist of three arbitrators." FINRA Rule 12401(c). Accordingly, because Elizondo originally claimed $100,000 in compensatory damages, his case was assigned to a single arbitrator.

Eleven days before the arbitration hearing (the Hearing) was scheduled to take place, Elizondo filed a Pre-Hearing brief, in which he increased his damages claim to $125,500. Elizondo did not seek to amend his complaint, nor did

Sanchez raise any objection to Elizondo's changed damages claim, prior to the Hearing.

At the outset of the Hearing, the arbitrator raised the issue of the increased damages request with the parties. Specifically, the arbitrator asked the parties whether either side objected to proceeding before a single arbitrator, in light of the increased damages claimed by Elizondo and the FINRA Rules. Sanchez's counsel objected, and the arbitrator heard argument on the issue. Ultimately, because neither party had made a motion to dismiss or to amend the complaint, the arbitrator determined that he would proceed alone based on the damages claimed in the original complaint.

On August 14, 2015, the arbitrator awarded Elizondo $75,000 in compensatory damages, exclusive of interest, fees, and costs (the Award). On September 17, 2015, Sanchez brought a petition in district court to vacate the Award, pursuant to 9 U.S.C. § 10. Elizondo answered and brought a countermotion to confirm the Award and for attorney's fees.

Sanchez raised several arguments in support of his petition to vacate the Award, but the district court granted the petition on the single ground that the arbitrator had exceeded his powers when he proceeded with a single arbitrator over Sanchez's objection, and in violation of FINRA Rule 12401(c). The court denied Elizondo's countermotion to confirm the Award, and it remanded the case "for further proceedings consistent with [its] Order."

## STANDARD OF REVIEW

"We review de novo [a] district court's vacatur of an arbitration award." *Lagstein v. Certain Underwriters at Lloyd's*, 607 F.3d 634, 640 (9th Cir. 2010).

## ANALYSIS

### I. Jurisdiction

The question of whether we have jurisdiction in this case presents an issue of first impression in our court. The Federal Arbitration Act (the FAA), 9 U.S.C. §§ 1–16, allows an appeal to be taken from any order "confirming or denying confirmation of an award" or "vacating an award," or from "a final decision with respect to an arbitration . . . subject to [the FAA]." *Id.* at § 16(a). However, the statute does not address the appealability of an order that vacates an award *and* remands the case for a new arbitration.

All other circuits that have addressed this jurisdictional question have determined that appellate courts are not deprived of the jurisdiction conferred by 9 U.S.C. § 16(a) when a vacatur order also remands for a new arbitration. The Fifth Circuit reached this conclusion first, in *Forsythe International, S.A. v. Gibbs Oil Company of Texas*, 915 F.2d 1017 (5th Cir. 1990). There, a district court had vacated an arbitration panel's decision and remanded the case to be heard by a new panel. *Id.* at 1018, 1020. The Fifth Circuit reasoned that because the district court's decision "nullified the decision of an arbitration panel," it was reviewable on appeal. *Id.* at 1020.[1] The First, Second, Third, and Seventh

---

[1] The Fifth Circuit and others have subsequently distinguished between "an order vacating an award and remanding the case back to

Circuits have since adopted the Fifth's reasoning and conclusion. *See, e.g.*, *Bull HN Info. Sys., Inc. v. Hutson*, 229 F.3d 321, 328 (1st Cir. 2000) (holding that "an order of the district court which vacates and remands an arbitral award is not thus made an interlocutory order" and is appealable); *Jays Foods, L.L.C. v. Chem. & Allied Prod. Workers Union, Local 20*, 208 F.3d 610, 612–13 (7th Cir. 2000) (holding that orders vacating and remanding an award are immediately appealable, though nonfinal); *V.I. Hous. Auth. v. Coastal Gen. Constr. Servs. Corp.*, 27 F.3d 911, 914 (3d Cir. 1994) (holding that where "remand constitutes a re-opening that would begin the arbitration all over again," even before the same arbitrator, the remand order is appealable); *Landy Michaels Realty Corp. v. Local 32B-32J, Serv. Emps. Int'l Union*, 954 F.2d 794, 797 (2d Cir. 1992).

We are persuaded by the reasoning of these circuits, and we now hold that we have jurisdiction pursuant to § 16 to review vacatur orders that also remand for a new arbitration. The text of § 16 and the policies motivating its enactment prompt us to reach this conclusion. Though the text of § 16 says nothing with regard to remand orders, it expressly permits the appeal of orders vacating arbitration awards, and final decisions respecting arbitration. *See* 9 U.S.C. § 16(a). Section 16 also expressly prohibits the appeal of orders granting a stay pending arbitration, directing arbitration to proceed, compelling arbitration, or refusing to enjoin an arbitration. *See id.* § 16(b). The difference is clear: § 16

---

arbitration for a rehearing," and an order that neither vacates nor confirms an award but only remands a "case back to the same arbitration panel for further clarification of the existing award," holding that the former order is appealable while the latter is not. *E.g.*, *Murchison Capital Partners, L.P. v. Nuance Commc'ns, Inc.*, 760 F.3d 418, 420–21 (5th Cir. 2014); *Landy Michaels Realty Corp. v. Local 32B-32J, Serv. Emps. Int'l Union*, 954 F.2d 794, 797 (2d Cir. 1992).

permits the appeal of orders that *terminate* an existing arbitration, while prohibiting the appeal of orders that *continue* an existing arbitration. Because a vacatur that remands for a new arbitration terminates the initial arbitration as conclusively as a vacatur that does not remand, it falls into the former category, and is appealable.

We see no reason to assume that Congress meant to exclude vacaturs that remand from the category of appealable vacaturs without saying so. After all, the inclusion of a remand order when a court vacates an arbitration award is common. Indeed, when a district court vacates an award, the FAA itself contemplates remand. *See* 9 U.S.C. § 10(b) ("If an award is vacated and the time within which the agreement required the award to be made has not expired, the court may, in its discretion, direct a rehearing by the arbitrators.").

In reaching this conclusion, we do not exceed the bounds of our interpretive purview. We recognize that our ability to infer from congressional silence is limited. *E.g.*, *Burns v. United States*, 501 U.S. 129, 136 (1991) ("An inference drawn from congressional silence certainly cannot be credited when it is contrary to all other textual and contextual evidence of congressional intent."); *Mobil Oil Corp. v. Higginbotham*, 436 U.S. 618, 625 (1978) ("There is a basic difference between filling a gap left by Congress' silence and rewriting rules that Congress has affirmatively and specifically enacted."). We also recognize that we have held previously "that appellate jurisdiction under 9 U.S.C. § 16(a) is confined to the types of orders that are specified in the statute," and declined to invoke the policy of the FAA to expand the scope of that jurisdiction. *See Van Dusen v. Swift Transp. Co. Inc.*, 830 F.3d 893, 899 (9th Cir. 2016). Here, we simply conclude that construing § 16 to confer

jurisdiction over cases involving remands for new arbitration *is* confining jurisdiction under § 16 to the types of orders that are specified in the statute. Section 16 expressly permits the appeal of orders vacating arbitration awards, and it does not exclude from this appealable category a subcategory of vacaturs that also involve a remand.

We note as well that we have good reason to infer that Congress chose *not* to exclude remands because that inference is consistent with the policies motivating § 16. Specifically, this interpretation of § 16 is consistent with the strong federal policy in favor of arbitration that drove the FAA's passage. If, for example, the inclusion of

> an order remanding the case to a different arbitration panel render[ed] a vacatur unreviewable, parties to arbitration could never determine whether the district court acted within the narrow statutory limits governing vacatur of the original award. Such a result would disserve the policies that promote arbitration and restrict judicial review of awards.

*Forsythe Int'l*, 915 F.2d at 1020. By contrast, allowing appeals in such cases would "further[] the 'pro-arbitration policy designed to expedite confirmation of arbitration awards' articulated by Congress when it amended the FAA to allow appeal from certain orders concerning arbitration," *Bull HN Info. Sys.*, 229 F.3d at 328 (quoting *Hewlett-Packard Co., Inc. v. Berg*, 61 F.3d 101, 104 (1st Cir. 1995)), while still protecting against piecemeal appeals, *see, e.g.*, *Murchison*, 760 F.3d at 422–23; *Bull HN Info. Sys.*, 229 F.3d at 327–28 (distinguishing "[a] remand for a new arbitration proceeding" from "an unappealable interlocutory order" that

would "offend 'the policies disfavoring partial resolution by arbitration,'" because the former "encourages finality and completeness" (quoting *Forsythe Int'l*, 915 F.2d at 1020 n.1)).

We therefore join the First, Second, Third, Fifth, and Seventh Circuits in holding that we have jurisdiction pursuant to § 16 where a vacatur is accompanied by an order remanding for a new arbitration. Here, the district court vacated the Award and remanded the case "for further proceedings consistent with [its] Order." Because the vacatur was premised on the arbitrator's purported error in allowing the Hearing to proceed before a single arbitrator over the objection of Sanchez's counsel, it was effectively a remand for a new arbitration before a panel of three arbitrators. We have jurisdiction over Elizondo's appeal of this order pursuant to § 16.**[2]**

## II. The Arbitrator Did Not Exceed His Powers.

We now turn to the merits of Elizondo's appeal. Below, the district court found that the arbitrator committed error by proceeding with a single arbitrator over Sanchez's objection, in violation of FINRA Rule 12401(c). More specifically, the district court held that when the arbitrator "proceeded alone" after noting "that [Elizondo] claimed $125,500 in damages in his 'Pre-Hearing brief' and that [Sanchez] refused to consent to a single arbitrator," the arbitrator conducted the arbitration contrary to "the method agreed upon by the parties," and thereby exceeded his powers.

---

**[2]** Because we hold that we have jurisdiction over this appeal, we deny Sanchez's motion to dismiss for lack of subject matter jurisdiction; motion to strike; motion for sanctions; and motion to supplement his motion to dismiss.

We disagree. As relevant here, 9 U.S.C. § 10 provides that a district court may vacate an arbitration award "where the arbitrators exceeded their powers." § 10(a)(4). This is a very "high standard for vacatur." *Lagstein*, 607 F.3d at 641. "It is not enough for petitioners to show that the panel committed an error — or even a serious error. 'It is only when [an] arbitrator strays from interpretation and application of the agreement and effectively "dispense[s] his own brand of industrial justice" that his decision may be unenforceable.'" *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010) (alterations in original) (citations omitted) (quoting *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001) (per curiam)). "The FAA imposes certain rules of fundamental importance, including the basic precept that arbitration 'is a matter of consent, not coercion.'" *Id.* at 681 (quoting *Volt Info. Sci., Inc.* v. *Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989)). "[T]he parties' intentions control . . . because an arbitrator derives his or her powers from the parties' agreement to forgo the legal process and submit their disputes to private dispute resolution." *Id.* at 682 (internal quotations omitted).

"We have held that arbitrators 'exceed their powers' in this regard not when they merely interpret or apply the governing law incorrectly, but when the award is 'completely irrational,'" *Kyocera Corp. v. Prudential-Bache Trade Servs., Inc.*, 341 F.3d 987, 997 (9th Cir. 2003) (en banc) (quoting *French v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 784 F.2d 902, 906 (9th Cir. 1986)), or "exhibits a 'manifest disregard of law,'" *id.* (quoting *Todd Shipyards Corp. v. Cunard Line, Ltd.*, 943 F.2d 1056, 1059–60 (9th Cir. 1991)). These standards were not met in this case.

## A. The Arbitrator's Award Was Not Completely Irrational.

"An award is completely irrational 'only where the arbitration decision fails to draw its essence from the agreement.'" *Biller v. Toyota Motor Corp.*, 668 F.3d 655, 665 (9th Cir. 2012) (quoting *Lagstein*, 607 F.3d at 642); *see also Lagstein*, 607 F.3d at 643 ("[A]rbitrators exceed their powers . . . when they 'act outside the scope of the parties' contractual agreement.'" (quoting *Mich. Mut. Ins. Co. v. Unigard Sec. Ins. Co.*, 44 F.3d 826, 830 (9th Cir. 1995)). "An arbitration award 'draws its essence from the agreement if the award is derived from the agreement, viewed in light of the agreement's language and context, as well as other indications of the parties' intentions.'" *Biller*, 668 F.3d at 665 (quoting *Lagstein*, 607 F.3d at 642). This standard applies equally "to the arbitrator's interpretation of matters of procedure in the contract as well as matters of substance." *Lagstein*, 607 F.3d at 643; *see also Polimaster Ltd. v. RAE Sys., Inc.*, 623 F.3d 832, 836 (9th Cir. 2010).

In *Lagstein*, we addressed an issue similar to the one presented here. There, the district court had vacated an arbitration panel's "punitive damages award on the . . . ground that the panel no longer had jurisdiction over the dispute after issuing the initial arbitration award." 607 F.3d at 643. The insurance policy at issue "provided that the arbitration was governed by the commercial arbitration rules of the American Arbitration Association," one rule of which provided that an award be made within thirty days of the arbitration hearing's closing date. *Id.* However, the arbitration panel had held a punitive-damages hearing and made a punitive-damages award outside that time limit. *Id.* We determined, upon review of the parties' agreement and

the governing rules it selected, that the panel had plausibly interpreted both. *Id.* at 644–45.

Here, looking to the parties' agreement and the governing rules it selected, we conclude that the arbitrator's interpretation and award were not irrational. The arbitrator's award was grounded in the essence of the parties' agreement, which empowered the arbitrator to conduct an arbitration compliant with FINRA's By-Laws, Rules, and Code of Arbitration Procedure. FINRA Rule 12409 empowered the arbitrator to "interpret and determine the applicability of all provisions under the Code" and provided that his interpretations would be "final and binding upon the parties."

Here, the arbitrator interpreted and determined the applicability of FINRA Rule 12401. The arbitrator recognized that this Rule permitted a single arbitrator to decide a case where the amount of the claim does not exceed $100,000, but required a panel to decide a case where the amount claimed exceeds $100,000. He asked the parties to address the applicability of the Rule in light of Elizondo's Pre-Hearing assertion that he was owed damages in the amount of $125,500. Ultimately, the arbitrator determined that because Elizondo had not amended his complaint to enlarge his original damages claim, the Rule permitting a case to be heard by a single arbitrator still applied. In other words, he interpreted Rule 12401's language — specifically, "the amount of the claim" — to reference the amount of the claim pleaded in the operative complaint rather than any amount later sought in the arbitration.

This interpretation was plausible. "Undoubtedly, reasonable judges and arbitrators could interpret the [FINRA] rules differently from the way that the [arbitrator] did in this case." *Lagstein*, 607 F.3d at 645. Indeed, the

district court did so. But this was error. It was not the province of the district court, nor is it the province of this court, to determine whether the arbitrator committed an error, even a serious error, in interpreting FINRA Rule 12401. *See Stolt-Nielsen*, 559 U.S. at 671. A reviewing court need only determine that the arbitrator confined himself to the interpretation and application of the parties' agreement. *Id.* Because the arbitrator did so here, he did not exceed his authority. The district court erred in vacating the arbitrator's rational award.

## B. The Arbitrator Did Not Exhibit Manifest Disregard of the Law.

"Manifest disregard of the law means something more than just an error in the law or a failure on the part of the arbitrators to understand or apply the law." *Biller*, 668 F.3d at 665 (quoting *Lagstein*, 607 F.3d at 641). "To vacate an arbitration award on this ground, 'it must be clear from the record that the arbitrators recognized the applicable law and then ignored it.'" *Id.* (quoting *Lagstein*, 607 F.3d at 641).

Here, it is clear from the record that the arbitrator recognized the applicable law and then *applied* it. The Award itself reflects this, detailing the arbitrator's decision-making process as follows:

> Immediately prior to the start of the evidentiary hearing, the Arbitrator raised the procedural issue of panel composition based on [Elizondo's] monetary claim which then exceeded $100,000.00. In response, [Elizondo's] counsel made a request to proceed with one arbitrator. [Sanchez's] counsel objected to [Elizondo's] counsel's request. After due deliberation, the

> Arbitrator granted [Elizondo's] counsel's request to proceed with one arbitrator.

The district court took issue with the arbitrator's application, holding that the arbitrator erred when he applied improperly FINRA Rule 12401(c). However, when it comes to the "manifest disregard of law" standard, "mere allegations of error are insufficient." *Carter v. Health Net of Cal., Inc.*, 374 F.3d 830, 838 (9th Cir. 2004).

The district court held that the arbitrator had acted contrary to the parties' agreement, and cited several out-of-circuit cases in support of that holding. But even if those cases were authoritative, which they are not, they fail to support the district court's holding. In those cases, courts were concerned with direct violations of parties' initial agreements to arbitrate. *See Brook v. Peak Int'l, Ltd.*, 294 F.3d 668, 673 (5th Cir. 2002) (violation of panel-selection procedure outlined in employment agreement); *Cargill Rice, Inc. v. Empresa Nicaraguense Dealimentos Basicos*, 25 F.3d 223, 224 (4th Cir. 1994) (violation of commercial contract requiring arbitrators chosen by mutual agreement); *Avis Rent A Car Sys., Inc. v. Garage Emps. Union, Local 272*, 791 F.2d 22, 23–25 (2d Cir. 1986) (violation of collective bargaining agreement selecting applicable rules). In this case, the violation was a step further removed. The arbitrator did not violate directly the parties' initial agreement by relying upon rules other than the FINRA Rules that the agreement deemed applicable. Rather, he complied with that agreement in looking to the FINRA Rules and discussing their applicability with the parties.

Here, the arbitrator's alleged violation took place at the next step, in his interpretation of the applicable rules. Only

one of the cases that the district court cited involved a similar scenario, and it does not support the district court's analysis. *See R.J. O'Brien & Assoc., Inc. v. Pipkin*, 64 F.3d 257, 263 (7th Cir. 1995) (holding that arbitrators did not exceed their powers in interpreting requirements of applicable National Futures Association Rules regarding arbitrator appointment). Thus, the district court identified no authority supporting his vacatur, which we now hold was erroneous. The arbitrator did not exhibit a manifest disregard of the law.

## CONCLUSION

For the foregoing reasons, we reverse the district court's vacatur. Because the district court resolved Sanchez's petition on only one of the several grounds for vacatur that Sanchez asserted, we also remand for further proceedings consistent with this decision. Before the district court may address Elizondo's countermotion to confirm the Award, it must determine whether any additional grounds exist to vacate, modify, or correct the Award.

Appellee shall bear the costs on appeal.

REVERSED AND REMANDED.

---

IKUTA, Circuit Judge, concurring:

Under 9 U.S.C. § 16(a) "an appeal may be taken from – (1) an order– (E) modifying, correcting, or vacating an award." Elizondo appeals from a district court order vacating an award, so we have jurisdiction under § 16. Because Congress has spoken clearly, there is no need to engage in an examination of the policies underlying § 16(a) or the potential meaning of Congressional silence to

determine the scope of this jurisdictional grant. *See New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 358–59 (1989) ("Congress, and not the Judiciary, defines the scope of federal jurisdiction within the constitutionally permissible bounds."). Therefore, I agree we have jurisdiction over this appeal but do not join Section I of the majority.