# United States Court of Appeals
## For the First Circuit

_____

No. 00-1190


BULL HN INFORMATION SYSTEMS, INC.

Plaintiff, Appellee,

v.

CHARLES J. HUTSON

Defendant, Appellant.

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Robert B. Collings, U.S. Magistrate Judge]

_____

Before

Torruella, Chief Judge,

Boudin and Lynch, Circuit Judges.

_____


Michael J. Liston, with whom Carr & Liston was on brief, for appellant.

David B. Chaffin, with whom Kathleen A. Kelley and Hare & Chaffin were on brief, for appellee.

_____

October 6, 2000

_____

**LYNCH, Circuit Judge**.  Arbitration sometimes fails to fulfill its promise of efficient, inexpensive dispute resolution.  Charles J. Hutson, believing his employer, Bull HN Information Systems, owed him commissions and had underpaid certain benefits, sought to arbitrate the dispute as required under the terms of his contract.  After winning two rounds of arbitration but twice losing in district court review of the awards, Hutson appeals the court order vacating the latest arbitration award in his favor for unpaid commissions.  That award results from the first stage of an arbitration; benefits-related claims are to be arbitrated later.  Specifically, in the first phase of the arbitration, the arbitrator determined that Hutson's request for arbitration was timely and that he was, indeed, entitled to payment of the commission he sought.

A magistrate judge of the district court, applying the Federal Arbitration Act, 9 U.S.C. § 1 <u>et seq.</u>, held on round one that the arbitrator exceeded his authority and so vacated and remanded the finding that Hutson's request for arbitration was timely.  Following the court's remand, the arbitrator again concluded that Hutson's request was timely; the court vacated the modified award and remanded the entire case to a new arbitrator.  Hutson has not yet arbitrated his benefits-related claims, some of which turn on the timeliness of his demand.

Hutson argues that the district court improperly vacated the arbitrator's finding of timeliness, along with his commissions award.  We agree.  Because the district court went beyond the applicable "exceedingly deferential" standard of review when it overturned the

-2-

arbitration award, we reverse the order and direct entry of judgment confirming the arbitral award for Hutson on the issues of the timeliness of his demand and the compensation due, and remand for arbitration of Hutson's benefits-related claims.

Hutson's appeal also gives rise to a question of first impression in this circuit of whether the FAA's provisions allowing appeal from certain orders concerning arbitration cover an order vacating and remanding a partial award. Permitting appeal in this case would not offend the strong federal policies favoring arbitration and disfavoring piecemeal litigation, and we conclude that appellate jurisdiction exists.

## I.

Hutson began working as a sales representative for Bull in 1989. Bull's 1990 Sales Compensation Plan included Section VI, entitled "Interpretation and Dispute Resolution," which, in turn, contained sections with different headings. Section VI.D, entitled "Arbitration of Certain Disputes," required covered employees to submit to arbitration "[a]ll disputes which involve claims for $3,000 or more, and which arise out of the participant's course of employment or out of the termination thereof." That section also provided that "[t]he Commercial Arbitration Rules of the American Arbitration Association shall apply to all aspects of the arbitration between the parties." The Plan did not list the applicable AAA rules or otherwise make them available to participants. A different section, VI.E, entitled "Controlling Law", included a choice of law provision, which provided that the Plan would be "governed in all respects by" Massachusetts law.

A separate section, Section VI.F, entitled "Limitations of Actions," required claimants to demand arbitration of disputes arising out of the Plan within two years after the claim arose. The basic dispute between the parties is whether this aggregation of sections required that notice of demand for arbitration be filed with the AAA, as AAA rules state, or simply sent to the employer.

In 1991, while Hutson was hospitalized following a liver transplant, his wife twice sent letters to Bull on his behalf, once by certified mail, asserting that Hutson was due commissions for work on an account in 1990 and requesting arbitration of the dispute in accordance with the provisions of the Plan. The letters read, in relevant part:

> Under the terms of the Sales Compensation Plan we are to ask for arbitration within two years of the occurrence. The non-payment of this matter came to our attention in mid-October 1990. This letter and the attached statement is Chuck's official request for this arbitration and his explanation of why this commission is due. Please forward this request to the appropriate arbitration committee under the terms of the Plan. . . .
>
> . . . A speedy response to this matter would be appreciated.

Bull did not respond.[1] These letters demanded arbitration within the two-year period.

Hutson eventually elected deferred disability retirement from Bull, effective February, 1994. In 1995, Hutson served a formal Demand

---

[1] Although Bull says there is a question as to whether it ever received those letters, the arbitrator resolved that question of fact against Bull.

for Arbitration on Bull seeking recalculation of his benefits base and repayment of certain benefits, as well as the 1990 commission claim. The demand was filed at the regional AAA office. Bull did not dispute the matter going to arbitration but defended that Hutson's claims were barred because he failed to follow the procedures required for a formal arbitration demand within the Plan's two-year filing period as to the 1991 letters. It said the 1995 Demand was simply too late.

Arbitral Proceedings

When the parties proceeded to arbitration in 1995, by stipulation the arbitrator divided the case into two phases. In Phase 1, the arbitrator was to determine: 1) whether Hutson's claim was barred for failing to file a claim for arbitration under the Plan's two-year limitation provision; and 2) if Hutson was not barred, whether any compensation and/or commission was due on the 1990 sale.[2] After a two-day hearing including testimony from several witnesses, the arbitrator ruled that the Plan's two-year limitations period did not bind Hutson because the Plan was " not a contract" and that "the parties are deemed to have submitted this matter to arbitration under Rule 7 of the AAA Commercial Arbitration Rules." The arbitrator apparently misread the language of the Plan which specified that Bull employees were at-will employees and that the Plan did not create a contract for employment for a specific period. That language, of course, could not mean that there was no contract to pay compensation owed or to send

_____

[2]  Phase 2 was to include all his remaining claims, most of which are benefits-related.

-5-

such disputes to arbitration. The arbitrator also determined that Hutson, "by his wife, twice filed a timely demand for arbitration to which [Bull] failed to respond. [Hutson], therefore, has met any statute of limitation applicable in this matter." On the merits of Hutson's commissions claim, the arbitrator found that Hutson was entitled to $52,605.57 plus 10% interest from January 1, 1991.

On Bull's petition, the magistrate judge vacated the arbitrator's Phase 1 Award, ruling that the arbitrator had exceeded his authority by invalidating the Plan's limitations period. See Bull HN Information Systems, Inc. v. Hutson, 983 F. Supp. 284, 292 (D. Mass. 1997). The court remanded the case to the arbitrator for determination of the timeliness issue according to the Plan's two-year provision. The magistrate judge, in his initial opinion, asserted that the arbitrator never considered whether there was a timely demand in light of his "no contract" ruling. Because there was no appeal from that initial opinion, we do not consider whether that conclusion was correct. The magistrate judge then went on, in dicta,[3] to define the issue on remand as whether there had been a "timely, i.e., within two

---

[3]     Bull tries to bootstrap from this dicta to an argument that the language is the law of the case and so Hutson is bound. The law of the case doctrine does not apply to dicta. See, e.g., Dedham Water Co., Inc. v. Cumberland Farms Dairy, Inc., 972 F.2d 453, 459 (1st Cir. 1992) ("Dictum constitutes neither the law of the case nor the stuff of binding precedent."). In any event, it has an equitable component and it would be unfair, under the circumstances, to hold Hutson to the error by the district court. See, e.g., United States v. Ticchiarelli, 171 F.3d 24, 29 (1st Cir.) (doctrine has flexibility where error by district court would cause "serious injustice"), cert. denied, --- U.S. ---, 120 S. Ct. 129 (1999).

years provided by the contract, demand for arbitration as defined in Rule 6." Id. (emphasis added). The magistrate thus inappropriately assumed the answer to an issue of contract interpretation which was properly committed to the arbitrator. The arbitrator's response must be understood in this context.

In the second arbitration proceeding, the arbitrator again refused to enforce the Plan's limitations clause, this time because he found that the Plan was an "archetypal contract of adhesion." The arbitrator also found that Hutson had "by his wife, twice filed demands for arbitration to which [Bull] failed to respond" and concluded that "[t]he demand for arbitration was, therefore, made in a timely manner under all of the circumstances of this matter."

Hutson sought to confirm the award. Bull once again sought, in the original action, to vacate the arbitrator's decision. Its application to vacate the "Modified Phase 1 Award" was dismissed for lack of jurisdiction. The court said it had entered final judgment in the previous action vacating the first Phase 1 Award and had not retained jurisdiction. Bull instituted a new action requesting that the court vacate the award. Once again, the magistrate judge ruled that the arbitrator exceeded his authority and manifestly disregarded the law. The court also ruled that remand to a new arbitrator was warranted because the arbitrator "has yet again chosen to create his 'own notions of industrial justice' rather than follow the terms of the agreement and the governing law."

Hutson thereafter moved twice for clarification of the court's order, seeking determination of whether the entire award was vacated or whether certain claims survived. The court clarified that its order vacated the entire Modified Phase 1 Award and that the new arbitrator was to decide not only those issues determined in the Modified Phase 1 Award but also all issues that had not yet been arbitrated, although any of the arbitrator's rulings other than those vacated by the court remained intact. Hutson appeals from this amended judgment.

## II.

A. Jurisdiction

Two jurisdictional questions are presented: whether this court has appellate jurisdiction over Hutson's appeal and whether Bull meets the amount in controversy required to assert diversity jurisdiction.[4]

1. Appellate Jurisdiction and the Federal Arbitration Act

In turn, two questions of appellate jurisdiction are presented: whether the fact that the order remands for a new arbitral

---

[4] In this new action, Bull originally requested that the court vacate the award but enter judgment for Bull. Hutson successfully moved to dismiss Bull's application for lack of subject matter jurisdiction because the amount in controversy, measured by the value of an order vacating the award, was less than $75,000. The court thought it appropriate to focus only on the amount of the award granted. After the court granted Bull leave to amend, Bull added a request for remand, the potential value of which would arguably exceed $75,000.

proceeding makes it an interlocutory order and whether the fact that it is only a partial award makes it an unappealable, piecemeal interlocutory order. Each is a question of first impression here.

The Federal Arbitration Act, 9 U.S.C. § 1 et seq., permits appeal from certain orders concerning arbitration which otherwise would not qualify as final judgments under the traditional final judgment rules of 28 U.S.C. § 1291 (1994). See Hewlett-Packard Co., Inc. v. Berg, 61 F.3d 101, 104 (1st Cir. 1995) (order confirming arbitration award "is appealable now because Congress directed in the statute governing arbitration-related appeals that such an 'order' . . . should be immediately appealable"). Under the FAA, immediate appeal may be taken from, inter alia, an order denying confirmation of an award, 9 U.S.C. § 16(a)(1)(D), and an order vacating an award, id. § 16(a)(1)(E). Appeal from an interlocutory order directing arbitration to proceed, however, is precluded under § 16(b) in order to further the federal policy promoting arbitration. See Seacoast Motors of Salisbury, Inc. v. Chrysler Corp., 143 F.3d 626, 628-29 (1st Cir.) ("pro-arbitration purposes of the FAA and the institutional goal of avoiding piecemeal appeals and systemic delays" served by not permitting appeal from interlocutory orders), cert denied, 525 U.S. 965 (1998).[5]

---

[5]     This case is distinguishable from one like Seacoast, which dealt with appeal from an order compelling arbitration. In that type of case, we have held that we "lack jurisdiction under the FAA to

-9-

Hutson's appeal of the district court's order denying confirmation of the arbitrator's Modified Phase 1 Award falls squarely within § 16(a)(1)(D), which permits an appeal from an order "denying confirmation of an award or partial award." Id. (emphasis added). The other part of the district court's order, which vacated the award and remanded the entire matter to a new arbitrator, appears to be covered by § 16, although the statutory language provides for appeal from orders "vacating an award." § 16(a)(1)(E). The statute does not expressly mention remands, and so the question arises whether this remand order renders the order a nonappealable interlocutory order. While this court has not yet spoken on this question, other courts of appeals that have done so "routinely assume . . . that an order vacating an arbitrator's decision but remanding for additional arbitration is appealable under § 16(a)(1)(E) . . . ." Perlman v. Swiss Bank Corp. Comprehensive Disability Protection Plan, 195 F.3d 975, 980 (7th Cir. 1999); see also Jays Foods, L.L.C. v. Chemical & Allied Product Workers Union, Local 20, AFL-CIO, 208 F.3d 610, 613 (7th Cir. 2000) (observing that the FAA make orders vacating and remanding arbitral awards appealable immediately); Forsythe Int'l, S.A. v. Gibbs Oil Co. of Texas, 915 F.2d 1017, 1020 (5th Cir. 1990) ("Where the

review whether the court's order compelling arbitration was proper." Id. at 629. Interlocutory orders compelling arbitration are not final under § 16. See id. at 627.

district court has vacated an award and ordered new arbitration by a different panel, its vacatur becomes reviewable pursuant to 9 U.S.C. [§ 16(a)(1)(E)]."); Virgin Islands Housing Auth. v. Coastal Gen. Const. Services Corp., 27 F.3d 911, 914 (3rd Cir. 1994) (vacatur and remand order that requires reevaluation of the entire controversy is reviewable).

The reasoning of those courts is persuasive, and we hold that an order of the district court which vacates and remands an arbitral award is not thus made an interlocutory order. Allowing the appeal furthers the "pro-arbitration policy designed to expedite confirmation of arbitration awards" articulated by Congress when it amended the FAA to allow appeal from certain orders concerning arbitration. Hewlett-Packard, 61 F.3d at 104. This is not like an order remanding to the arbitrator merely for clarification. Compare Landy Michaels Realty Corp. v. Local 32B-32J, Serv. Employees Int'l Union, AFL-CIO, 954 F.2d 794, 797-98 (2d Cir. 1992) (remand to arbitrator to reconsider calculation of damages not appealable under FAA). A remand for a new arbitration proceeding, unlike an unappealable interlocutory order within the scope of § 16(b), does not offend "the policies disfavoring partial resolution by arbitration," see Forsythe Int'l, 915 F.2d at 1020 n.1, but instead encourages finality and completeness.

The second question is whether § 16(a)(1)(E), which does not expressly mention partial awards, provides appellate jurisdiction. The

-11-

arbitrator's Phase 1 Award could be characterized as a partial order because it contemplates further arbitration proceedings in Phase 2. The statute expressly provides an appeal may be taken from orders denying or confirming partial awards. We think that the statute read as a whole contemplates an appeal when there is an order vacating an award, including partial awards.

2.  Diversity Jurisdiction

Because the FAA itself does not create a basis for federal subject matter jurisdiction, there must be an independent basis for federal jurisdiction. See PCS 2000 LP v. Romulus Telecomm., Inc., 148 F.3d 32, 34-35 (1st Cir. 1998) (no federal jurisdiction over FAA action where plaintiff failed to demonstrate federal question as independent basis for federal subject matter jurisdiction). Bull asserts subject matter jurisdiction based on diversity of citizenship. Because the party asserting federal jurisdiction, once challenged on the issue, bears the burden of demonstrating its existence, see Department of Recreation and Sports of Puerto Rico v. World Boxing Ass'n, 942 F.2d 84, 88 (1st Cir. 1991), Bull must demonstrate that it meets the $75,000 minimum amount-in-controversy requirement to invoke this court's diversity jurisdiction under § 1332. Review of questions of subject matter jurisdiction is de novo. See BIW Deceived v. Local S6, 132 F.3d 824, 831 (1st Cir. 1997). Hutson says there is no subject matter jurisdiction for failure to meet the jurisdictional amount. The

subject matter jurisdictional amount is plainly met here for reasons we discuss shortly.

Hidden in the issue is another issue which we note but do not resolve. That is whether the amount requirement is met where the sums at issue before the arbitrator at the start of the arbitration exceed $75,000, the final (non-partial) award is for less than $75,000, and the federal judicial relief sought is merely vacating and dismissing or merely confirming the award. (We put to one side for now the fact that the award here was only a partial award.) One approach would be to analogize this to the situation where the claim in a court complaint exceeds $75,000 but the jury awards less than $75,000. Under these circumstances, there is diversity jurisdiction. See Coventry Sewage Associates v. Dworkin Realty Co., 71 F.3d 1, 4-5 (1st Cir. 1995) (once diversity jurisdiction is established, subsequent changes in amount in controversy will not divest the court of jurisdiction). The analogy would be made in recognition of the close connection between arbitration and subsequent enforcement proceedings and also to carry out the federal policies in favor of arbitration. A contrary result could be thought to undermine these policies. A contrary result would mean a loss of diversity jurisdiction that would have otherwise been present if the case had been litigated rather than arbitrated (or even if a motion to compel arbitration had been brought).

There is an argument for the other view. It proceeds on the

-13-

basis that arbitration is independent of judicial proceedings, that enforcement jurisdiction is not given by the FAA but must be established independently, and that the "legal certainty" that plaintiff's claim is less than the jurisdictional amount is established by the arbitral award. See St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 289 (1938). That is apparently the view taken by the district court here and by the Eleventh Circuit in Baltin v. Alaron Trading Corp., 128 F.3d 1466, 1472 (11th Cir. 1997), cert. denied, 525 U.S. 841 (1998).

But, as we have said, the jurisdictional amount is met here for several reasons: the remand sought as to the commissions alone meant that Hutson might recover the sums he sought, in excess of $75,000,[6] and, in any event, the issue of benefits, with a value in excess of $75,000, remained to be arbitrated. Even if a remand had not been sought, the total amount at issue in the entire arbitration exceeded $75,000. When a bifurcated arbitration results in a partial

---

[6] The district court dismissed Bull's first petition to vacate the modified award based on the fact that Bull did not seek remand, which the court concluded meant that the amount in controversy determination was limited to the value of the arbitral award Bull sought to vacate, $52,605.57. See Bull HN Information Systems, Inc. v. Hutson, 98-10998, 1998 WL 426047, at *5 (D. Mass. July 24, 1998). As a result, the court did not take account of the remaining benefits issues in its calculation. It should have. An order vacating the arbitrator's award meant that Hutson's demand was untimely, barring arbitration of his remaining benefits-related claims. Thus, the value to Bull of having the arbitrator's award vacated was properly measured by including those amounts in determining whether the amount-in-controversy requirement was met.

-14-

award and enforcement proceedings under the FAA are brought as to the partial award, we think the better rule is to measure the amount in controversy by the amount at stake in the entire arbitration. Any other rule would impose a penalty -- loss of federal jurisdiction -- on the use of procedural devices such as bifurcation, devices meant only to simplify and expedite proceedings. The purpose of arbitration in large part is to have simplified, expedited proceedings and courts should be reluctant to adopt rules which interfere with the accomplishment of those purposes.

Because we conclude that the amount-in-controversy requirement is satisfied, we only touch briefly on Bull's argument that the interest on the Hutson's Modified Phase 1 Award should be included in our calculation of the amount in controversy. That argument is contrary to the express words of the statute and well-established case law. See Velez v. Crown Life Ins. Co., 599 F.2d 471, 473 (1st Cir. 1979) (noting "established rule" that interest not included). Moreover, this case does not fall within the exception for cases where interest is an integral part of the damages at the time the claim arose and therefore "cannot be included as a part of the jurisdictional amount because it is incurred only because of the delay in payment and is incidental to the main amount claimed." Id. at 473-74.

B.        Timeliness of Bull's Application to Vacate

Hutson argues that Bull's application to vacate the Modified

Award was untimely because it was not filed within Massachusetts' 30-day filing period for applications to vacate arbitral awards. Mass. Gen. Laws ch. 251, § 12(b). Hutson's contention is that the filing period is jurisdictional and therefore unwaivable. There is contrary case law that filing periods are akin to statutes of limitations, which are routinely subject to waiver when parties fail to raise them, Cf. Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982) (filing timely charge within EEOC filing period like a statute of limitations, subject to waiver, estoppel, and equitable tolling), and we have referred to the FAA filing period as a "limitations period," see Fradella v. Petricca, 183 F.3d 17, 19 (1st Cir. 1999). The question is also raised of whether the Massachusetts or federal filing period applies in this case.

But Hutson's argument is an afterthought. It was not raised before the district court and so it is waived.

C. The District Court's Order Vacating the Arbitrator's Award and Remanding to a New Arbitrator

There are bifurcated standards of review. We review the district court's ruling on an arbitration award de novo, but we also are mindful that the district court's review of arbitral awards must be "extremely narrow and exceedingly deferential." Wheelabrator Envirotech Operating Services Inc. v. Massachusetts Laborers Dist. Council Local 1144, 88 F.3d 40, 43 (1st Cir. 1996). Indeed,

-16-

"[a]rbitral awards are nearly impervious to judicial oversight." Teamsters Local Union No. 42 v. Supervalu, Inc., 212 F.3d 59, 61 (1st Cir. 2000). A court's review of an arbitration award is highly deferential because the parties "have contracted to have disputes settled by an arbitrator" and thus, "it is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept." United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 37-38 (1987). While the arbitrator's award must "draw its essence from the contract," as long as the arbitrator is "even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." Id. at 38.

Courts do retain limited authority to vacate an arbitrator's award. Section 10 of the FAA lists the circumstances in which a court has the authority to vacate an award, including certain types of misconduct by the arbitrator or where the arbitrator "exceeded [his] powers." 9 U.S.C. § 10(a)(4). To determine whether an arbitrator has exceeded his authority under § 10, however, courts "do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts," United Paperworkers Int'l, 484 U.S. at 38, and "[e]ven where such error is painfully clear, courts are not authorized to reconsider the merits of arbitration awards," Advest, Inc. v. McCarthy, 914 F.2d 6, 8 (1st Cir. 1990)

-17-

(internal quotation marks omitted).

Beyond the specific grounds enumerated in § 10, courts "retain a very limited power to review arbitration awards." Id. Essentially, arbitral awards are subject to review "where an award is contrary to the plain language of the [contract]" and "instances where it is clear from the record that the arbitrator recognized the applicable law -- and then ignored it." Id. at 9. In the parlance of this and other circuits, a reviewing court may vacate an arbitral award if it was made in "manifest disregard" of the law. See id. The district court's order in this case vacating the Modified Phase 1 Award is based on its finding that the arbitrator exceeded his authority, see 9 U.S.C. § 10(a)(4), and ignored the law, see Advest, 914 F.2d at 9.

The arbitral award had two essential components: a finding that, for various reasons, there was no time-bar to the arbitration and a finding as to the amount of commissions owed. Bull has not challenged the commissions portion of the award in this appeal.

The sole issue for our review, therefore, is the district court's rejection of the arbitrator's conclusion that Hutson's demand for arbitration was timely. Bull contends that Hutson was bound by the procedural requirements of AAA Commercial Arbitration Rule 6, which requires that a claimant's written notice of its intention to arbitrate "shall contain a statement setting forth the nature of the dispute, the amount involved, if any, the remedy sought, and the hearing locale

-18-

requested" and that the claimant "shall file at any regional office of the AAA three copies of the notice and three copies of the arbitration provisions of the contract."  Bull asserts that Hutson's claims are barred because he failed to file three copies of his 1991 requests with the American Arbitration Association and failed to specify the locale requested.  Thus, Bull says, only the 1995 claim is operable, and that claim was too late.

In his Modified Phase 1 Award, the arbitrator found that the claim for arbitration was not untimely.  That conclusion must be upheld unless it was made in manifest disregard of the law or we are convinced that the arbitrator exceeded his authority.  Neither of these conditions exist.

The arbitrator referred to the contract as one of adhesion but, of course, even a contract of adhesion is enforced unless unconscionable or unfair.  See Lechmere Tire & Sales Co. v. Burwick, 277 N.E.2d 503, 506 & n.3 (Mass. 1972) (adhesion contracts generally enforceable unless unconscionable, offend public policy, or shown to be unfair in the particular circumstances), cited in Chase Commercial Corp. v. Owen, 588 N.E.2d 705, 708 (Mass. App. Ct. 1992). We think, however, that what the arbitrator rather clearly meant is that effective notice was given to the company even if not in precisely the formal terms that were specified in the contract; that the contract was drafted by the company and the cross-reference to the arbitration rules

-19-

was not as informative as it should have been; and that in substance the company got the gist of what it had bargained for and that was enough to satisfy the contract.  Under Massachusetts law, the governing law here, contracts of adhesion are construed strictly against the drafter and the risks of ambiguity fall on the drafter.  See 17 R. Bishop, Massachusetts Practice, § 2.2, at 15 (4th ed. 1997).  After all, the interpretation by the Hutsons, lay people, that they were "demanding" arbitration by sending letters to the company asking for arbitration is an eminently sensible one.[7]

The magistrate judge also incorrectly concluded that the arbitrator had exceeded his authority.  The parties' stipulation expressly set forth the issues to be decided -- timeliness and compensation due -- authorizing the arbitrator to interpret the contract's time-limitation provision.[8]  The arbitrator's inquiry

---

[7]  The nature of judicial review of arbitral action is complicated by the fact that arbitrators need not state any reason for their decision, United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 598 (1960), and, if they choose to say anything, are often remarkably terse.  In light of the arbitrator's earlier odd statement in the first order that there was no contract at all and the rather bare reference to the contract of adhesion in the modified order, the view taken by the magistrate judge is understandable (although wrong).

[8]  This case is distinguished from one in which a court asked to compel arbitration determines, in the first instance, whether the parties agreed to arbitrate their dispute at all.  See Coady v. Ashcraft & Gerel, No. 99-2165, --- F.3d ---, 2000 WL 1072386 (1st Cir. Aug. 8, 2000).  In that type of case, "the court is to make this determination by applying the federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act

-20-

rationally encompassed what the clause required, whether it was enforceable, and whether Hutson complied with it. As other courts have noted, "the arbitrator's interpretation of the scope of the issue submitted to him is to be treated with great deference," Federated Dept. Stores v. United Food & Commercial Workers Union, Local 1442, 901 F.2d 1494, 1498 (9th Cir. 1990), and "must be upheld so long as it is rationally derived from the parties' submission." Richmond, Fredericksburg & Potomac R.R. Co. v. Transportation Communications Int'l Union, 973 F.2d 276, 280 (4th Cir. 1992); see also Mobil Oil Corp. v. Independent Oil Workers Union, 679 F.2d 299, 302 (3d Cir. 1982).

As such, there is no basis for the matter to be remanded to a different arbitrator. We have reversed the finding that the former arbitrator manifestly disregarded the law and exceeded his authority, and there is no showing of bias or prejudice that would warrant remanding the case to a new arbitrator. Cf. Grand Rapids Die Casting Corp. v. Local Union No. 159, 684 F.2d 413, 417 (6th Cir. 1982)

---

. . . . [A]lthough questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration . . . . The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985) (internal quotation marks and citations omitted).

-21-

(arbitrator's "outburst against the language of the contract compromise[d] appearance of impartiality"); <u>Stroehmann Bakeries, Inc.</u> v. <u>Local 776 Int'l Brotherhood of Teamsters</u>, 762 F. Supp. 1187, 1189-90 (M.D. Pa. 1991) (arbitrator expressed personal opinions derogatory to victim of sexual assault, used inappropriate language, and exhibited personal bias), <u>aff'd</u>, 969 F.2d 1436 (3d Cir.), <u>cert. denied</u>, 506 U.S. 1022 (1992).

## III.

We <u>reverse</u> the vacatur of the arbitrator's "Modified Phase 1" Award, direct entry of judgment confirming that arbitral award, and direct that the case to be <u>remanded</u> for arbitration of all remaining issues.

<u>So ordered</u>.