# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-30396

PERSHING, L.L.C.,

United States Court of Appeals
Fifth Circuit

**FILED**
April 6, 2016

Lyle W. Cayce
Clerk

Plaintiff - Appellee

v.

THOMAS KIEBACH; MARCEL DUMESTRE; MARGARET DUMESTRE;
MAMIE HELEN BAUMANN, Through power of attorney Mamie C.
Sanchez; JOSEPH BECKER; ET AL,

Defendants - Appellants

Appeal from the United States District Court
for the Eastern District of Louisiana

Before JOLLY and JONES, Circuit Judges, and MILLS*, District Judge.

EDITH H. JONES, Circuit Judge:

This is an interlocutory appeal of the district court's order denying Appellants' Fed. R. Civ. Pro. 12(b)(1) motion to dismiss, for lack of subject matter jurisdiction, Appellee's motion to confirm an arbitration award. Adopting the better reasoned approach to the amount in controversy under these circumstances, we **AFFIRM** the district court's order and hold that the monetary amount sought in the underlying arbitration is the amount in controversy for purposes of diversity jurisdiction.

---

* District Judge of the Northern District of Mississippi, sitting by designation.

No. 15-30396

I.

Appellants are investors who suffered financial losses as a result of R. Allen Stanford's Ponzi scheme.  In their arbitration complaint, seeking $80 million in damages, Appellants alleged that Appellee ("Pershing"), a clearing broker for Stanford Group Company, failed to disclose adverse financial information.  After a two week hearing, a Financial Industry Regulatory Authority ("FINRA") panel rejected Appellants' claims, but it awarded them $10,000 in compensation for certain arbitration-related expenses.  On November 7, 2014, Pershing filed, pursuant to Section 9 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §1, *et seq.*, a motion to confirm the arbitration award.

Because the arbitration award fell below the amount in controversy for federal jurisdiction, 28 U.S.C. §1332(a), Appellants sought dismissal.[1]  On April 22, 2015, the district court denied Appellants' motion, holding that the $75,000 amount in controversy requirement was met.  *Pershing LLC v. Kiebach,* 101 F. Supp. 3d 568 (E.D. La. 2015).  The district court noted, however, that federal courts have disagreed about the proper standard for determining the amount in controversy in the context of confirming an arbitration award below $75,000, and proceeded to certify the issue for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).  This court granted leave to file an interlocutory appeal, and Appellants timely appealed.

---

[1] Appellants also filed a motion to vacate the arbitrator's award in New York federal court, before voluntarily dismissing that action and filing a similar motion to vacate in Louisiana state court.  That case was later removed to the Middle District of Louisiana, where it has been stayed pending the resolution of the present matter.

No. 15-30396

## II.

This court applies a *de novo* standard of review and uses the same standard as the district court when reviewing a 12(b)(1) motion to dismiss. *LeClerc v. Webb*, 419 F.3d 405, 413 (5th Cir. 2005). Issues of subject matter jurisdiction are questions of law reviewed *de novo*. *Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 327 (5th Cir. 2008). "It is to be presumed that a cause lies outside [a federal court's] limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S. Ct. 1673, 128 L. Ed. 2d 391 (1994) (internal citations omitted).

## III.

This court granted an interlocutory appeal to decide whether the amount in controversy for establishing diversity jurisdiction over a petition to confirm an arbitration award is the amount awarded by the arbitration panel or the amount previously sought in the arbitration proceeding.[2]

Courts that have confronted this issue generally follow one of two approaches—the award approach or the demand approach. *Karsner v. Lothian*, 532 F.3d 876, 882 (D.C. Cir. 2008). "[U]nder the award approach, the amount in controversy is determined by the amount of the underlying arbitration award regardless of the amount sought." *Id.*; *Baltin v. Alaron Trading Corp.*, 128 F.3d 1466, 1472 (11th Cir. 1997); *Ford v. Hamilton Invs., Inc.*, 29 F.3d 255, 260 (6th Cir. 1994). In contrast, "[under] the demand

---

[2] "Although the FAA constitutes federal law, 'the Supreme Court has interpreted the statute as not itself bestowing jurisdiction on the federal district courts.'" *Karsner v. Lothian*, 532 F.3d 876, 882 (D.C. Cir. 2008) (quoting *Kasap v. Folger Nolan Fleming & Douglas, Inc.*, 166 F.3d 1243, 1245-46 (D.C. Cir. 1999); *see also Southland Corp. v. Keating*, 465 U.S. 1, 16 n.9, 104 S. Ct. 852, 79 L. Ed. 2d 1 (1984) (the FAA "creates federal substantive law requiring the parties to honor arbitration agreements, [but] . . . does not create any independent federal-question jurisdiction under 28 U.S.C. § 1331 (1976) or otherwise.").

No. 15-30396

approach, the amount in controversy is the amount sought in the underlying arbitration rather than the amount awarded."[3]  *Id.*; *Bull HN Info Sys., Inc. v. Hutson*, 229 F.3d 321, 329 (1st Cir. 2000);  *Am. Guar. Co. v. Caldwell*,  72 F.2d 209, 211 (9th Cir. 1934).

In its order denying Appellants' motion to dismiss, the district court concluded that the demand approach was the correct one: "[e]ach approach has strengths and weaknesses, and the issue is one that will be resolved by the Fifth Circuit.  However, having considered . . . [the cited authority] the Court finds that the demand approach is more appropriate." *Pershing,* 101 F. Supp. 3d at 573.

We agree.  Based on Appellants' arbitration demand of $80 million, the district court correctly concluded that the $75,000 amount in controversy requirement was met.  First, the demand approach recognizes the true scope of the controversy between the parties.  The only logical assumption about Appellants' efforts to prevent confirmation of this arbitration award is that they want a second chance to pursue their claims.  The $10,000 award "is but the last stage of litigation" that began with an $80 million controversy. *Pershing*, 101 F. Supp. 3d at 573.  Therefore, the amount at stake is the $80 million that Appellants initially sought in arbitration, not the minimal award for arbitration-related costs.[4]

Second, the demand approach avoids the application of two conflicting jurisdictional tests for the same controversy.  The federal district court has

---

[3] There is a third approach, known as the "remand approach," which has been held to apply if the petition includes a request to remand and reopen the arbitration proceeding.  *Id.* That is not the case here.

[4] *See* Pershing's motion to confirm arbitration at ¶ 9 ("In their claims, Defendants sought to recover as damages their losses in the R. Allen Stanford Ponzi scheme in the amount of $80,000,000.").

4

diversity jurisdiction over a motion to compel arbitration based on the amount demanded in the petition. *Webb v. Investacorp, Inc.*, 89 F.3d 252, 256 (5th Cir. 1996). Under the award approach, however, the federal court would lack jurisdiction over a later petition to confirm or vacate the arbitration award in the same case if the award falls below the jurisdictional threshold. *See Karsner,* at 883-84. "The award approach would promote needless litigation and gamesmanship" because "litigants may file potentially frivolous, or unnecessary motions to compel arbitration in order to preserve their right to a federal forum for review of the eventual award." *Pershing*, 101 F. Supp. 3d at 574. This they could do by filing a motion to compel arbitration and, once it is granted, by seeking a stay of further court proceedings pending motions to confirm or vacate the final award. Conversely, under the demand approach, purely tactical and meritless litigation will likely be avoided. In these ways, the demand approach effectively acknowledges "the close connection between arbitration and subsequent enforcement proceedings" and helps "to carry out the federal policies in favor of arbitration." *Bull HN Info. Sys.*, 229 F.3d at 329; *see also Smith v. Tele-Town Hall, LLC*, 798 F. Supp. 2d 748, 755 (E.D. Va. 2011) (recognizing "Congress's careful tailoring of the relationship between district courts and arbitration panels.").

Third, the demand approach allows "the district court to exercise jurisdiction coextensive with the diversity jurisdiction that would have otherwise been present if the case had been litigated rather than arbitrated." *Id.* at 884 (internal quotation marks and citation omitted); *see also Luong v. Circuit City Stores, Inc.*, 356 F.3d 1188, 1197-98 (9th Cir. 2004) (Kozinski, J., dissenting), *opinion withdrawn,* 368 F.3d 1113 (9th Cir. 2004).[5] In essence,

---

[5] "The absurdity of the [award approach] can be demonstrated by considering the following example: X claims Y owes him $100,000 in a contract dispute. The case is ordered to arbitration, and the arbitrator comes up with an award of $80,000. X claims he was

No. 15-30396

the amount in controversy is measured the same way in federal court for litigation and for matters submitted on petitions to compel arbitration: the plaintiff's pleading, not the ultimate result in the case, governs jurisdiction.

For these reasons, we conclude that "the award approach has the least appeal," while "the demand approach is soundest because it avoids anomalous and unwarranted inconsistencies in a federal court's jurisdiction." *Karsner*, 532 F.3d at 883; *Tele-Town Hall, LLC*, 798 F. Supp. 2d at 753. Accordingly, we **AFFIRM** the district court's order.[6]

---

entitled to more and petitions to have the award vacated. Under the [award] approach, the district court would have jurisdiction. But if the arbitrator happens to award only $30,000—or nothing at all—because of the same claimed legal error, the district court would lack jurisdiction. There is no principled distinction between the two cases; if the petitioner prevails in either case, the award will be vacated and petitioner will be back in arbitration seeking his full $100,000. I can see no logic at all in letting the very award that is the fruit of the claimed error govern the amount in controversy."

[6] The concurrence advocates using a case-by-case approach, as opposed to adopting a general approach (*i.e.*, the demand approach) to determine the jurisdictional amount. The concurrence relies on *Theis Research, Inc. v. Brown & Bain*, 400 F.3d 659 (9th Cir. 2005), and interprets the case's revised opinion as one that adopts a fact-specific analysis and rejects the demand approach adopted in the original opinion. Interestingly, the concurrence's narrow interpretation of *Theis*, which neither party proposes in this case, clashes with a more recent Ninth Circuit opinion. *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Moore*, 171 F. App'x 545, 546 (9th Cir. 2006) (quoting *Theis*, 400 F.3d at 662) ("'[T]he amount at stake in the underlying litigation, not the amount of the arbitration award, is the amount of controversy for the purposes of diversity jurisdiction . . . .'").

No. 15-30396

MICHAEL P. MILLS, District Judge, concurring in result only:

I agree with the majority that the district court correctly concluded, based on the facts of this case, that the amount in controversy should be decided based on the $20 million demand in arbitration. I write separately because I believe that the parties to this appeal have framed the issues in an overbroad manner which has led the majority to make a holding which is broader than is necessary in this case. I also write to make clear my view that many of the legal assumptions underlying this interlocutory appeal are erroneous, based largely upon inaccurate descriptions of the state of federal precedent set forth in the D.C. Circuit's opinion in *Karsner v. Lothian*, 532 F.3d 876, 882 (D.C. Cir. 2008).

I understand the majority's inclination to simply answer the question as certified; indeed, that was also my initial inclination. However, in cases where an interlocutory appeal is based upon a suspect legal assumption, I feel it is incumbent upon us to correct it. This court granted interlocutory appeal to resolve the controlling issue of law as to "the proper method of determining the amount in controversy for the purpose of establishing diversity jurisdiction over a petition to confirm an arbitration award." The parties to this litigation clearly anticipated that, in deciding this issue, this court would choose between two alleged "approaches" in this context, namely the "demand approach" and the "award approach." The parties seem to agree that a third alleged "approach," namely the "remand approach," is inapplicable here.

Certainly, providing clarification to district courts is a laudable goal, and, if either the "award approach" or the "demand approach" provided what I felt to be reliable standards for assessing amount in controversy issues in motions to confirm arbitration awards, I would be only too happy to support the adoption of such a rule. However, upon closer review of federal appellate

7

case law in this context, I do not believe that it is either necessary or advisable to adopt any such general "approach" in this context.

I believe that, when one carefully reads the various federal appellate decisions in this context and considers the factual scenarios presented, one inevitably comes to the conclusion that the vast majority of these decisions are quite reasonable. This is true whether the federal appellate decision in question considered the amount of the demand, the amount of the award, or whether a remand to arbitration is sought to be the most important factor in determining the amount in controversy. *Karsner* instructs us that the federal courts are sharply divided into various "approaches" in this context, yet such was not true when the D.C. Circuit's opinion was written. To the extent such is true now, this appears to be largely the result of *Karsner*'s outsized influence. Unfortunately, *Karsner* has become something of a self-fulfilling prophecy, since many federal courts, including a number of district courts in this circuit (and the one in this case) have accepted *Karsner*'s premise that the law in this context is one in which federal courts must choose a single "approach" when determining amount in controversy issues. The majority has likewise accepted the *Karsner* premise in its opinion in this case.

Like the majority, I initially accepted *Karsner*'s premise at face value and believed that this court was required to choose from the two "approaches" which are arguably relevant in this case, namely the "demand approach" and the "award approach." I have since determined, however, that *Karsner*'s basic paradigm is faulty. There is nothing in the U.S. Supreme Court's jurisprudence suggesting that it is either necessary or advisable for circuit courts to choose a single factor to be used to determine the amount in controversy in all motions to confirm arbitration awards, no matter the circumstances. The current version of § 9 of the FAA was enacted in 1947, and it seems likely that, if the U.S. Supreme Court intended for the amount in

8

controversy issues in this context to be determined based upon a single factor, then it would have so indicated by now.    In my view, a federal court's overriding duty is to determine whether the amount in controversy is met in a particular case, and I fail to see how any single approach could possibly yield the correct result in all cases.

In *Karsner*, the D.C. Circuit conducted a review of nationwide authority in this context and, in so doing, it classified various circuits as following the "award approach," "demand approach" or "remand approach."   *Karsner*'s classifications in this regard, even at this late stage in the law, appear to be suspect.  I note that certain circuit court decisions which were described by *Karsner* as following the "award approach" were actually quite narrow decisions which included no language adopting any rule of general applicability.   In *Baltin v. Alaron Trading Corp.*, 128 F.3d 1466 (11th Cir. 1997), for example, the Eleventh Circuit's analysis of whether diversity jurisdiction existed was simply as follows:

> Finally, we must determine whether the district court had diversity jurisdiction over this case.  *See* 28 U.S.C. § 1332(a). The maximum remedy sought by the Baltins was the vacatur of the arbitration award of $36,284.69.16.  Diversity jurisdiction did not exist because it was a "legal certainty" that the amount in controversy was less than $50,000, the amount required for federal diversity jurisdiction at the time the Baltins filed suit.

*Baltin,* 128 F.3d at 1472.

Similarly, in *Ford v. Hamilton Inv., Inc.*, 29 F.3d 255 (6th Cir. 1994), the Sixth Circuit, in finding that the amount in controversy requirement was met in that case, wrote that:

> Mr. Ford's complaint alleges that the arbitration panel awarded Hamilton Investments $26,666.63, plus $3,857.53 in interest. The total of these figures obviously does not exceed $50,000. In the arbitration proceedings Mr. Ford claimed more than $50,000 against Hamilton Investments, but he never asked the district

court to order that the arbitrators reopen his claim against Hamilton Investments; all he sought from the district court was the vacation of an award that fell short of the jurisdictional amount by almost $20,000.

*Ford*, 29 F.3d at 260.[1]

In my experience, circuit courts which seek to adopt particular standards as binding in future cases generally do so after considering a wide variety of factors applicable not only to the case at bar, but also to other cases as well. There is no such analysis contained in these two decisions, nor do either of them cite another decision from their circuit as dictating a specific factor which they must consider in determining the amount in controversy. It thus seems clear to me that the circuit courts in *Baltin* and *Ford* simply concluded that, based on the facts before them, the amount in controversy issue should be decided based on the amount of the award in those cases, with no attempt to adopt a general "approach" in this context.[2]

While I agree with the district court that the amount of the demand is most relevant in this case, I believe that the results reached in *Baltin* and *Ford* were quite reasonable, based upon the facts presented in those cases. Without delving too deeply into the facts of *Baltin* and *Ford*, I note that they each involved factual scenarios where it was clear, at the time of the filing of the federal action, that no party was continuing to seek recovery in excess of the jurisdictional amount. *Baltin* and *Ford* each involved motions to vacate

---

[1]I note that, in a decision written after *Karsner*, the Second Circuit similarly considered the amount of the award most relevant, without adopting any "approach" in this regard. *See Fernicola v. Toyota Motor Corp.*, 313 Fed. App'x. 408, 409 (2d Cir. 2009).

[2]This is made even clearer in the case of the Eleventh Circuit which, as discussed below, later found a plaintiff's request for a remand to arbitration to be dispositive, while emphasizing that this result was consistent with *Baltin*. *See Peebles v. Merrill Lynch, Pierce, Fenner & Smith Inc.,* 431 F.3d 1320, 1325–26 (11th Cir. 2005).

arbitration awards which were filed by parties who had received adverse financial judgments against them in arbitration, in an amount below the federal jurisdictional amount.[3] As noted in the aforementioned quotations, each of the petitioners in those cases sought to have the arbitration verdicts against them reduced to zero, and the circuit courts in those decisions thus found that the arbitration awards represented the *upper* limit of any financial award which might result from the motions to vacate. That strikes me as being a quite reasonable conclusion based upon the facts of those cases.

In this case, by contrast, appellee is only too happy to pay the $10,000 arbitration award entered against it; indeed, it has tendered that amount to appellants. Moreover, appellee filed its motion to confirm under circumstances where it had every good faith reason to believe, as was confirmed by subsequent events, that appellants would oppose the arbitrator's award, with a clear goal of obtaining recovery in excess of the jurisdictional amount. Thus, in this case, unlike in *Baltin* and *Ford*, the arbitrator's award represents the lower, not the upper, range of possible results from litigation relating to the validity of the arbitrator's award. Accordingly, the amount of the award in arbitration constitutes a far less reliable basis for evaluating the amount in controversy here than in *Baltin* and *Ford*. This illustrates the quite simple point that different cases are different and that different factors may be relevant in resolving them.

I also note that some of the decisions which *Karsner* described as following a particular approach purported to be consistent with decisions which ostensibly follow a different approach. Indeed, *Karsner* described the

---

[3]In my view, the fact that *Baltin* and *Ford* involved motions to vacate, rather than confirm, arbitration awards does not remove their relevance in this case. Indeed, both sides to this appeal have relied upon authorities relating to both motions to confirm and vacate arbitration awards, and it seems to me that similar principles should apply to each.

Ninth Circuit's decision in *Theis Research, Inc. v. Brown & Bain*, 400 F.3d 659, 664–65 (9th Cir. 2005) as adopting the "demand approach," but *Theis* cited, with apparent approval, the *Baltin* and *Ford* decisions, which, once again, have been cited as following the "award approach."   In harmonizing its result with that in *Baltin*, for example, the Ninth Circuit in *Theis* noted that the Eleventh Circuit had stressed that the plaintiffs in *Baltin* "did not request an award modification that would provide[them] with money.   Instead, [they] sought merely to reduce or eliminate the arbitration award against them." *Theis*, 400 F.3d at 664, *citing Baltin*, 128 F.3d at 1472, n. 16.

If what *Karsner* described as leading circuit court decisions in favor of the "demand approach" and the "award approach" are actually in substantial agreement with each other, then I must wonder how real these alleged "approaches" actually are.   In so stating, I note that *Karsner* described the First Circuit's decision in *Bull HN Info. Sys., Inc. v. Hutson*, 229 F.3d 321 (1st Cir. 2000) as "applying" the "demand approach," but this characterization clearly seems inaccurate.   Indeed, the First Circuit specifically reserved judgment on this issue, writing that:

> Hidden in the issue is another issue which we note but do not resolve.   That is whether the amount requirement is met where the sums at issue before the arbitrator at the start of the arbitration exceed $75,000, the final (non-partial) award is for less than $75,000, and the federal judicial relief sought is merely vacating and dismissing or merely confirming the award.

*Bull*, 229 F.3d at 329.   The First Circuit instead decided the amount in controversy issues in that case based upon factors specific to bifurcated arbitration proceedings, *see id.*, and it thus seems quite clear that *Bull* neither adopted nor followed any general "demand approach."

Giving *Karsner* the benefit of the doubt, it could be argued that the term "approach" is itself ambiguous and that the reference to a court following a

particular "approach" does not necessarily mean that it would never follow a different approach. At a bare minimum, however, the *Karsner* approach is confusing, and district courts in this circuit have interpreted the decision as requiring courts to single out one factor to elevate above all others. *See, e.g. Busby v. Bruce Massey Const., LLC*, 2015 WL 7015349, at *1 (S.D. Miss. Nov. 12, 2015); *Curbelo v. Hita*, 2009 WL 2191084, at *4 (W.D. Tex. July 22, 2009). Removing confusion in this regard seems reason enough to distance ourselves from *Karsner*.

In deciding whether to adopt a general approach in this regard, I consider it quite significant that one federal circuit which initially appeared to adopt such an approach quickly thought better of the idea. Indeed, on motion for rehearing, the Ninth Circuit in *Theis* modified its opinion to replace generalized language consistent with an "approach" to one which merely made a case-specific finding that the amount of the demand in arbitration was most relevant in that case. In other words, the Ninth Circuit modified its opinion to do exactly what this concurrence recommends. Specifically, the Ninth Circuit in *Theis* deleted a sentence including the language:

> Our conclusion that we measure the amount in controversy by the amount at stake in the underlying litigation is consistent not only with *American Guaranty* from this circuit, but with decisions from other circuits as well.

*Theis*, 400 F.3d at 661. The deleted sentence was replaced with the following sentence:

> Our decision to measure the amount in controversy in this case by the amount at stake in the underlying litigation is consistent not only with *American Guaranty* from this circuit, but with decisions from other circuits as well.

*Id.*

13

Thus, the Ninth Circuit deleted generalized language stating that "we measure the amount in controversy by the amount at stake in the underlying litigation" and replaced it with far more limited language stating that the court was merely finding "in this case" that the amount in controversy should be measured on that basis. In its revised opinion, the Ninth Circuit specifically noted the modifications to its opinion, writing that:

> With the foregoing amendments, the panel has voted unanimously to deny the petition for rehearing. Judge Trott has also voted to deny the petition for rehearing en banc, and Judges Thompson and Weiner recommend denial of that petition.

*Id.* at 661. The clear implication of the above is that, after initially releasing an opinion which included generalized language adopting something like a "demand approach," the Ninth Circuit quickly realized that its holding gave rise to conflicts with reasonable decisions from other circuits and accordingly modified its opinion to make a case-specific holding and thereby avoid having to rehear the case, either in panel or en banc.

It seems clear from the manner in which the Ninth Circuit framed the issues in *Theis* that it initially intended to adopt a broad holding setting forth that circuit's approach to amount in controversy issues in this context. I can discern no reason why the Ninth Circuit would have modified its opinion in the manner it did other than to greatly narrow its holding. The fact that it was the Ninth Circuit's intent, in modifying the language in question, to move away from any "demand approach" is made even clearer by the fact that the modified language immediately preceded the portion of the opinion where the court wrote approvingly of the *Baltin* and *Ford* decisions. Clearly, an opinion can not be said to have adopted the "demand approach" if it writes approvingly of,

and claims to be consistent with, decisions which deem the amount of the award most relevant.[4]

I do not wish to be cumulative or unnecessarily harsh in criticizing *Karsner*, but since that decision's logic undergirds the majority's opinion, I will note another instance in which the decision inaccurately characterized another circuit's precedent. Specifically, the D.C. Circuit wrote that the Eleventh Circuit, which it described as initially "follow[ing] the award approach" in *Baltin*, "appear[ed] to have more recently adopted the remand approach." *Karsner*, 532 F.3d at 882-83, *citing Peebles v. Merrill Lynch, Pierce, Fenner & Smith Inc.,* 431 F.3d 1320, 1325–26 (11th Cir. 2005). I submit, however, that both *Baltin* and *Peebles* represent entirely logical and correct determinations of amount in controversy issues based on the facts of each case and that, contrary to *Karsner*, neither decision adopted an "approach" inconsistent with the other.

Indeed, the Eleventh Circuit in *Peebles* made it clear that it regarded its decision as consistent with *Baltin*, writing that:

> This issue is a matter of first impression for this court. *Baltin* does not speak to the issue raised here because "the maximum remedy sought" by the investors was the vacatur of the arbitration award against them that did not exceed the minimum required to satisfy 28 U.S.C. § 1332. 128 F.3d at 1472. Here the maximum remedy Peebles sought was vacatur of a zero dollar arbitration award and

---

[4]The majority notes that, in *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Moore*, 171 F. App'x 545, 546 (9th Cir. 2006), the Ninth Circuit quoted certain language in *Theis* which had not been modified in support of the application of a broad demand "approach." In my view, this simply reflects the fact that *Theis* was originally written to adopt the demand approach, and it appears that the Ninth Circuit modified the bare minimum of language in the opinion so as to assuage the concerns of judges who did not wish to adopt such a broad approach. Once again, the intent of the Ninth Circuit in *Theis* seems clear in light of the fact that the Court specifically praised, and claimed to be consistent with, *Baltin* and *Ford*. It seems self-evident that, if the Ninth Circuit would regard the amount of the award as being the determining factor in an appropriate case, then that circuit does not follow the "demand approach" at all. I do not believe that this circuit should do so either.

a new arbitration hearing at which he could urge his argument that he was entitled to up to $2,000,000 in damages. We hold that a federal court has subject matter jurisdiction where a party seeking to vacate an arbitration award is also seeking a new arbitration hearing at which he will demand a sum which exceeds the amount in controversy for diversity jurisdiction purposes. This approach is consistent with the approach taken by other circuits that have had occasion to address this question. *See, e.g., Theis Research, Inc. v. Brown & Bain*, 400 F.3d 659 (9th Cir. 2005); *Bull *1326 HN Info. Sys., Inc. v. Hutson*, 229 F.3d 321 (1st Cir. 2000).

Peebles, 431 F.3d at 1325–26. I find the logic of both *Baltin* and *Peebles* to be clear, and I believe that *Karsner* was simply incorrect in its characterization of these decisions.

I submit that most of the federal appellate authority in this context may be easily reconciled with each other and that such precedent may serve as persuasive authority for district courts to consider. This is particularly true if the decisions are analyzed from a paradigm of common sense, rather than "approaches." For example, I believe that a district court reviewing the facts of this case and *Theis* would be able to readily understand why the amount of the plaintiffs' demand was deemed most relevant, as opposed to cases like *Baltin* and *Ford*, where the amount of the award was considered dispositive. By the same token, I think a district court would readily understand why the Eleventh Circuit in *Peebles*, faced with a plaintiff seeking a remand to arbitration, viewed that fact as trumping the amount of the award in arbitration, thus rendering *Baltin* distinguishable. Indeed, as a simple matter of common sense, it is illogical to consider the award in arbitration dispositive if the plaintiff is seeking to return to arbitration, where he might seek an amount greater than the award. Recognizing this fact does not require the adoption of the "remand approach"; it merely requires the application of common sense.

No. 15-30396

Given that there are reasonable federal appellate decisions finding each of the three factors relevant in this context, I can see no benefit to following the *Karsner* approach of selecting a single factor to elevate above the other two. Indeed, it appears to me that there may well be additional factors which are relevant in this context. For example, consider a situation in which a plaintiff makes a demand in arbitration which is completely unrealistic. Assume, for example, a case in which a plaintiff sought $10 million in an arbitration action in which his sole claim was for property damage to his vacuum cleaner. Assume further that the arbitrator awarded only the $200 fair market value of the vacuum cleaner and that a motion was filed in federal court to confirm that award. In my view, a district court should have the discretion to take a realistic look at the facts of that case and determine that, notwithstanding the amount of the demand in arbitration, the amount in controversy requirement was clearly not met. Such a finding would strike me as entirely reasonable, even though it does not fit within one of the three alleged "approaches." I simply do not see the benefit of attempting to unduly limit the discretion of district courts to decide amount in controversy issues in this context.

As an additional point, I note that adopting the "demand approach" (or any other approach) would also run counter to the approach this circuit has taken in a closely analogous legal context, namely declaratory judgment actions filed by liability insurers. Conceptually-speaking, motions to confirm arbitration awards are quite similar to declaratory judgment actions, since they essentially seek a judicial declaration that an arbitration award is a valid one under the applicable legal standards. It is thus significant, in my view, that this circuit has adopted quite broad and flexible standards for determining the amount in controversy in declaratory judgment actions filed by insurers.

In *St. Paul Reinsurance Co. v. Greenberg*, 134 F.3d 1250 (5th Cir. 1998), the plaintiff insurance company sought a declaration of liability arising from

its denial of the insured's claim.  In this context, this court concluded that the amount in controversy is "the value of the right to be protected or the extent of the injury to be prevented."  *Greenberg*, 134 F.3d at 1253.  Clearly, this is a quite broad and flexible standard, and, while this court has frequently relied upon the amount of the plaintiff's demand in assessing the amount in controversy in declaratory judgment actions, it has adopted no categorical rule in this regard.  In *Hartford Ins. Group v. Lou–Con Inc.*, 293 F.3d 908 (5th Cir. 2002), for example, this court found that the amount in controversy requirement was not met in that declaratory judgment action, based partly on the limited nature of the insurance claims in that case.  *Hartford*, 293 F.3d at 912.  This court also noted, however, that we might consider different factors in certain other insurance cases.  For example, this court noted that "under certain circumstances the policy limits will establish the amount in controversy," particularly in cases relating to the "validity of the entire contract between the parties." *Id.* at 911, citing 14B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure: Jurisdiction 3d* § 3710 (3d ed. 1998).

Thus, this court has recognized that a categorical rule adopting a variant of the "demand rule" in the declaratory judgment context would be unwise and that greater flexibility in amount in controversy standards is required.  I believe that such a flexible approach would serve this circuit well in the instant context as well. In my view, the simple fact is that there is no "one size fits all" solution in this context and that adopting an "approach" whereby all amount in controversy issues are decided based upon a single factor simply does not work.  I believe that our circuit's standards in the declaratory judgment context demonstrate that we can offer district courts guidance on making amount in controversy determinations without unduly tying their hands.

No. 15-30396

In light of the foregoing, I agree with the majority that the district court properly relied upon the plaintiffs' demand in arbitration in deciding that the amount in controversy requirement was met in this case, but I would decline to adopt any categorical "approach" in this context. While the "demand approach" works well enough in this case, I believe it will lead to incorrect results when this court is faced with a case involving facts such as those in *Baltin* or *Ford*. I therefore respectfully concur in result only.