NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Cheshire
No. 2021-0061

KEENE SCHOOL DISTRICT

v.

KEENE EDUCATION ASSOCIATION, NEA-NH

Argued: November 16, 2021
Opinion Issued: February 8, 2022

Soule, Leslie, Kidder, Sayward & Loughman, PLLC, of Salem (Peter C. Phillips on the brief and orally), for the plaintiff.

Esther Kane Dickinson, of Concord, staff attorney, NEA-New Hampshire, by brief and orally, for the defendant.

MACDONALD, C.J. The plaintiff, Keene School District (School District), appeals the decision of the Superior Court (Ruoff, J.) denying the School District's petition to modify, correct or vacate an arbitrator's award. See RSA 542:8 (2021). The arbitration arose from grievances lodged by two teachers claiming that the School District's 120-day delay in paying early retirement benefits violated the collective bargaining agreement (CBA) between the School District and the defendant, Keene Education Association (Association). The arbitrator concluded that the School District's delay violated the CBA. We affirm.

I.  Factual and Procedural Background

The arbitrator found the following facts.  The CBA originally covered the period from July 1, 2014, through June 30, 2018.  The parties extended it to include the period during which the grievances were filed.  The following sections of the CBA Articles 14 and 11 are at issue in this dispute.

Section 14.1 provides in relevant part:

Any full-time member of the Keene Teacher's Bargaining Unit who is at least fifty-five (55) years of age and who has at least twenty (20) years of full-time service . . . as a teacher in the Keene School District may apply for early retirement . . . . Said application to retire early shall be made no later than December first (1st) prior to the intended July first (1st) retirement date . . . .

Section 14.3 provides in relevant part:

Said early full retirement participants shall receive from said date an annual stipend in accordance with the following schedule:

| YEARS OF SERVICE | EARLY RETIREMENT STIPEND AS A PERCENTAGE OF THE AVERAGE OF THE PRECEDING 5 YEARS ANNUAL SALARY |
|---|---|
| 35 | 39% |
| . | . |
| . | . |
| . | . |
| 20 | 31.5% |

Section 14.4 provides:

Any employee who participates in this early retirement plan shall not be entitled to any benefits whatsoever except the stipend set forth herein.  Nor shall the annual salary computation include the value of such fringe benefits.  Meaning and intending that the early retirement participant shall not be entitled to medical/dental insurance, life insurance or other benefits provided to members of the bargaining unit; nor shall the stipend percentage be applied to the value of such benefits.

2

Section 14.6 provides:

Stipends provided to employees under this plan shall automatically terminate upon the occurrence of any of the following:

    a. Normal retirement age as determined by the Social Security Administration;
    b. Death of an employee; in such event, the benefits of this plan shall not vest in the employee's estate;
    c. After the employee has received seven (7) full years of the early retirement benefit.

Finally, Section 11.3 provides in relevant part that "[a] grievance must be filed within forty-five (45) consecutive days of the time the grievant knew or should have known of the facts giving rise to the grievance."

An early retirement benefit for School District teachers has existed since at least 2005. Until 2011, teachers who availed themselves of this benefit retired on July 1 and received their first payment at the end of August or early September of the same year. During this period, the School District did not consider early retirement benefits as "earnable compensation" and, therefore, did not contribute the employer's required 17% contribution to the New Hampshire Retirement System (NHRS) or deduct 7% of the employee's payment to remit to NHRS.

In 2011, the legislature redefined "earnable compensation." Laws 2011, 224:161 (codified at RSA 100-A:1, XVII (Supp. 2021)). The new definition provided that cash incentives to encourage members to retire early were to be included as earnable compensation for those vested prior to January 1, 2012. Id. Because the School District had not treated early retirement stipends this way, it had not budgeted to do so. The statute also provided that, for all members, no matter when vested, payments made 120 days after termination from employment would not be included as earnable compensation. Id.

The two teachers at issue are Randall Burns and R. Scott Hyde. After 28 years of teaching in the School District, Burns applied for early retirement on November 19, 2018, with an effective date of July 1, 2019. After 24 years of teaching, Hyde applied for early retirement on October 10, 2018, with an effective date of July 1, 2019. The School District approved both applications. In letters dated December 12, 2018, the School District's human resources director informed the teachers: "The first year you are retired, the District will pay your annual stipend amount in equal, bi-weekly payments starting with the first pay period in November 2019 through June 30, 2020. This is so you and the Board [of Education] do not incur additional [NHRS] wage deductions from your stipend."

3

Delaying the first early retirement benefit payment until November ensured that payments were made 120 days after retirement and did not count towards earnable compensation under RSA 100-A:1, XVII. Between 2012 and 2018, forty-three teachers retired and received their first payment in the first payroll period of November. None of those teachers questioned the delay.

Hyde contacted NHRS and was told that its regulations do not require an employer to withhold early retirement benefits for 120 days. By letter dated March 12, 2019, Hyde conveyed this information to the School District and asked why the first early retirement payment was being delayed. Shortly thereafter, the School District's human resources generalist wrote to Hyde stating that she had been in contact with NHRS and quoted RSA 100-A:1's provision stating, "Earnable compensation shall not include compensation in any form paid later than 120 days after the member's termination of employment from a retirement eligible position . . . ." Id. The letter to Hyde again stated: "The [School] District, and you as the retired member do not want to incur any earnable compensation penalties." In its communications to Burns and Hyde, the School District did not state that it was avoiding its contribution to NHRS and diminishing the retirees' retirement benefit.

In late spring of 2019, Hyde and Burns realized that if the School District made the first early retirement bi-weekly payment in July 2019 and made the required 17% percent employer contribution while deducting the 7% employee contribution from payments made within 120 days after termination of their employment, their monthly retirement benefit from NHRS would increase by more than $100. On April 29, 2019, they filed identical grievances with the School District, alleging that withholding the early retirement payments until November 2019 violated various CBA sections, including CBA Sections 14.1 and 14.3. On May 21, 2019, the School District denied the grievances. The Association submitted the matter to arbitration.

The parties stipulated to the submission of three issues for resolution: first, is the dispute arbitrable due to the timeliness of the grievances; second, if the dispute is arbitrable, did the School District violate the CBA by paying the grievants their early retirement benefit beginning on November 1, 2019; and, third, if so, what shall be the remedy? Following a hearing, on April 14, 2020, the arbitrator issued a written award finding that the grievances were arbitrable and that the School District violated the CBA by failing to make the early retirement payments beginning July 1. The arbitrator concluded that the retirement payments include "all sums due for paying the stipend, including required contributions to NHRS." As for a remedy, the arbitrator stated that Hyde and Burns "may pursue their statutorily entitled retirement benefits with the New Hampshire Retirement System."

The CBA provides that either party may appeal the arbitrator's decision in accordance with RSA chapter 542. See RSA 542:1 (2021). The School

4

District petitioned the superior court to modify, correct or vacate the award. See RSA 542:8. Following a hearing, the superior court denied the petition. This appeal followed.

II. Analysis

Judicial review of an arbitrator's award is limited. Lebanon Hangar Assocs. v. City of Lebanon, 163 N.H. 670, 673 (2012). RSA 542:8 provides that a party to the arbitration may apply to the superior court to confirm, correct or modify the award for "plain mistake," or vacate the award "for fraud, corruption, or misconduct by the parties or by the arbitrators, or on the ground that the arbitrators have exceeded their powers." RSA 542:8. The question of an arbitrator's authority is a question of contract interpretation, which we review de novo. Lebanon Hangar Assocs., 163 N.H. at 673.

The School District raises several arguments challenging the arbitrator's award. We address each in turn. First, it argues that the arbitrator exceeded his powers by concluding that the early retirement stipends should include contributions to NHRS. Specifically, the School District argues that, although it agreed to arbitrate the timing of the stipend payments, it did not agree to arbitrate whether such payment is subject to NHRS contributions.

An arbitrator's jurisdiction over an issue depends upon the voluntary agreement of the parties. Id. His view of the scope of the issue is "entitled to the same deference normally accorded to the arbitrator's interpretation of the contract." Id. "In the absence of clearly restrictive language, great latitude must be allowed in the framing of an award and fashioning of an appropriate remedy." Id. (quotation omitted). "[I]t is the arbitrator's ultimate understanding of the scope of his authority that must be accorded deference by a reviewing court." Id. at 677; see Bull HN Information Systems, Inc. v. Hutson, 229 F.3d 321, 332 (1st Cir. 2000) (explaining that the arbitrator's interpretation of the scope of the issue submitted is treated with great deference and must be upheld if rationally derived from the parties' submissions).

In reaching the issue of NHRS contributions, the arbitrator acted well within the scope of the parties' submissions. The parties stipulated that the arbitrator should resolve whether the School District "violate[d] the [CBA], Article 14, by paying the grievants their early retirement benefit beginning on November 1, 2019?" The School District's justification for delaying the stipend was that Hyde and Burns would not have to "incur additional [NHRS] wage deductions from [their] stipend[s]." In its written submission to the arbitrator, the School District argued that Section 14.4 of the CBA prohibited any NHRS contribution for early retirement stipend recipients. As the superior court noted, the School District cannot now complain that the arbitrator lacked the authority to address an argument the School District had raised. We agree.

5

The School District contends, in the alternative, that, even if the issue of NHRS contributions was arbitrable, the arbitrator was plainly mistaken in light of Section 14.4 of the CBA. A reviewing court may vacate an arbitral award for a plain mistake of law under two circumstances. Finn v. Ballentine Partners, LLC, 169 N.H. 128, 146 (2016). First, the court may find a plain mistake of law when there has been a change in the law after the issuance of an award, but before the award is reduced to final judgment, if the court concludes that the arbitrator would not have reached the same conclusion had the arbitrator known of the change in law. Id. Second, the court may find a plain mistake of law when the arbitrator clearly misapplied the law to the facts. Id.

The arbitrator was not plainly mistaken in interpreting Section 14.4. He concluded, and we agree, that the section prescribes limitations on the calculation of the early retirement benefit. In its second sentence, Section 14.4 states that the "annual salary computation," meaning Section 14.3's formula for calculating the stipend, shall not "include the value of such fringe benefits." As the third sentence of Section 14.4 provides, the salary used for calculating the stipend does not include "medical/dental insurance, life insurance or other benefits." The third sentence limits the payment of such benefits after early retirement. The first sentence also limits the payment of such benefits after early retirement, providing that the retiree is not "entitled to any benefits whatsoever except the stipend." However, by making clear that early retirees may not receive benefits other than the stipend itself, section 14.4 cannot be read as restricting NHRS payments required by statute when that very benefit is paid.

The School District next argues that the arbitrator was plainly mistaken in failing to consider the past practice of making the first stipend payment 60 to 120 days after the July 1 retirement date. The arbitrator concluded that the School District's practice was at odds with the plain language of the CBA and that there was an absence of mutuality because "[t]here is no evidence that the Association knew about the 120 day delay in the School District's making these payments, much less that it agreed with such a practice." The School District does not argue that the language in Section 14.3 is ambiguous or silent in establishing July 1 as the date on which early retirement payments begin. Instead, it argues that, "[w]hile the arbitrator claims that 'the agreement must be interpreted as written,' it cannot be read in a vacuum. CBA's are living, working documents intended to govern the parties' relationship over a very long time, and that history should be afforded proper weight and consideration."

Essential to the School District's argument is that the parties had a common understanding of the past conduct. On this point, we find no plain mistake in the arbitrator's conclusion that the Association neither knew of, nor agreed to, the delayed stipend payments. The record is uncontroverted that, prior to the grievances at issue, no retiring teacher had complained of the

6

delayed stipend payment and no deductions or contributions were made to NHRS. And, even when Hyde and Burns ultimately became the first teachers to pursue the issue, the School District did not disclose that, by delaying stipend payments, it avoided its NHRS contributions and diminished the retirees' retirement benefits. Under these circumstances, the arbitrator made no plain mistake in concluding that the basic elements of mutuality were not present. See Elkouri & Elkouri, How Arbitration Works 12-6 to 12-7 (Kenneth May et al. eds., 8th ed. 2016) ("'Mutuality' refers to the requirement that a past practice is binding on the parties only when the circumstances ensure that it has been understood and accepted by both as an implied term of the contract."). Without mutuality, a past practice is not enforceable. See Appeal of N.H. Dep't of Corrections, 164 N.H 307, 309 (2012).

Finally, the School District argues that the arbitrator exceeded his authority by "directing that [NHRS] should make the grievants . . . finally whole as a result of the District's delay in paying them the early full retirement." (Capitalization omitted.) We do not agree with the School District's interpretation of the arbitrator's award. It simply states that Hyde and Burns "may pursue their statutorily entitled retirement benefits" with NHRS. By its plain language, the award does not direct either the grievants or NHRS to do anything.

Affirmed.

HICKS, BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.